FREDERICKA HOMBERG WICKER, Judge.
| gDefendant, Oscar Madrid, was convicted of second degree murder and cruelty to a juvenile. Defendant argues that: the evidence supported a conviction for manslaughter rather than second degree murder; the trial court erred by not suppressing his statement; and the trial court erred by not declaring a mistrial when unproven allegations of other crimes were presented to the jury. Upon review of the record and the law, we find that the evidence was sufficient to support a conviction of second degree murder and that the trial court did not err by refusing to suppress defendant’s statement or by not declaring a mistrial. Therefore, we affirm defendant’s conviction.

*780
FACTS AND PROCEDURAL HISTORY

The testimony at trial revealed that Ba-lería Lopez, victim, was killed by defendant on the morning of May 2, 2012. For years leading up to the killing, | defendant and the victim had a troubled romantic relationship. By the time of the killing, defendant, the victim, and the victim’s father, Mr. Lopez, lived together at 2208 Hero Drive in Gretna, Louisiana. The relationship between defendant and the victim produced two children.
Witnesses testified that defendant physically abused the victim on multiple occasions. Ms. Hilda Lopez Martinez, the victim’s sister, testified that she had seen bruises on the victim around fifty times. Ms. Martinez also testified that she witnessed defendant, in anger, throw a glass at the feet of the victim. She alleged this caused the victim to sustain a cut which required stitches. Further, Ms. Rodriguez, a friend of the victim, testified that during the time that the victim was pregnant, she saw defendant choking the victim. The court heard testimony that at the time of the killing, defendant planned to move out of the house because his romantic relationship with the victim was ending.
On May 2, 2012, at around 9:00am, the victim entered her home and saw defendant sleeping on the couch in the living room. Her entrance woke defendant who then confronted her about where she had been all night. The evidence reflects that defendant believed that the victim had been out the previous night with another man. An argument ensued between the two while they were seated on the couch. Defendant went to the kitchen to grab a knife before returning to the couch. Defendant and the victim continued to argue. This argument escalated and ended when defendant stabbed the victim in the neck one or more times.
The victim screamed out for her father, stood up from the sofa, and collapsed to the floor. When Mr. Lopez entered the living room he saw his daughter lying on the floor. Mr. Lopez asked defendant what he had done; to this, defendant responded, “I stabbed her.”
|4Evidently regretting his actions, defendant started to cut himself with a knife. When he realized that the victim was still breathing however, he dropped the knife and attempted to resuscitate her, pleading with Mr. Lopez to assist. When defendant realized that his efforts were futile, he asked Mr. Lopez to call the police. Before the police arrived, defendant got another knife and again began trying to cut himself. The victim’s father however wrestled this knife away from defendant.
At approximately 9:50a.m., Officer Da-mond Bartlett responded to the house at 2208 Hero Drive. Arriving on the scene, he noticed a Hispanic male on a cell phone standing in the doorway of the residence. He then entered the home and saw two Hispanic males: the one who had been in the doorway had moved to behind the sofa, the other was pushing on the stomach of a woman sprawled out on the floor. Officer Bartlett later determined that the man in the doorway was Mr. Lopez and that the other individual was the defendant.
Officer Bartlett testified that defendant’s compressions on the victim’s stomach appeared to be an attempt at CPR. As soon as defendant noticed Officer Bartlett, defendant begged “Help me.” Officer Bartlett knelt down to assess the victim’s injuries and when he determined that she lacked a pulse, he requested medical assistance and a supervisor. Meanwhile, Officer Bartlett observed a young child in the house covered in blood. This child, subsequently determined to be the two-year-old son of the victim and defendant, was *781 turned over to Detective Louis Alvarez, who observed three or four small lacerations on the child’s right arm and a cut on his head. A sweep of the house turned up two more young children, whose ages were approximately two and three. These children were passed off to other officers who continued to arrive on the scene.
| .^Defendant and Mr. Lopez were detained in handcuffs, escorted out of the house, secured in separate patrol vehicles, and brought to the police station. At the station, defendant began making unsolicited inculpatory statements. Detective Ca-nas, a Spanish language interpreter, advised defendant of his Miranda rights. Defendant then stated that he did not wish to speak. So officers did not question him after that point. Later that same day, with the help of Detective Canas acting as a translator, defendant was advised of his rights, executed a rights of arrestee form, waived his rights, and gave a statement.
At trial, defendant testified that he did not want to talk to the police and that he didn’t understand his rights as they were read to him. He stated that he did not tell the police the truth, instead telling them what they wanted to hear. He also testified that he did not intend to kill the victim.
On March 31, 2011, at a pre-trial Prieur hearing, the State sought to introduce evidence of defendant’s prior acts of violence against the victim. At that hearing, Ms. Martinez testified that she had seen bruises on the victim multiple times and that she believed that those bruises were from defendant’s violence against the victim. At the conclusion of this hearing, the trial court ruled that these and other statements would be allowed at trial to prove defendant’s motive and method of operation. At trial, Ms. Martinez testified that she had seen bruises on victim around 50 times. After Ms. Martinez testified to this, and after twenty-two additional questions were asked, counsel for defendant objected to Ms. Martinez’s testimony regarding seeing bruises 50 times. Counsel made a motion for a mistrial which the court denied.
On February 28, 2012, the jury found defendant guilty of both cruelty to a juvenile in violation of La. R.S. 14:93 and second degree murder in violation of La. R.S. 14:30.1. From these convictions, defendant now appeals.

16DISCUSSION

In his first assignment of error, defendant contends that the evidence did not support a conviction for second degree murder, but rather for the lesser offense of manslaughter. Defendant maintains that his was a crime of passion, provoked by the victim’s revelation of infidelity. Defendant argues that he lacked the specific intent to kill the victim. Defendant testified that he brandished the knife only to scare her. He argues that this lack of specific intent to kill is supported by his attempt to resuscitate her, his attempts to harm himself once he realized what he had done, and his remorse.
In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jack *782 son standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id., 08-20 at 7, 985 So.2d at 240.
Defendant was charged with and convicted of second degree murder in violation of La. R.S. 14:30.1. Second degree murder is defined as the killing of a |7human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Seals, 09-1089, pp. 13-14 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, 306 (citing La. R.S. 14:10(1)). The determination of specific intent is a question of fact. Id., 09-1089 at 14, 83 So.3d at 306. Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. Id. (citation omitted). Further, specific intent to kill can be implied by the intentional use of a deadly weapon such as a knife or a gun. State v. Cochran, 09-85 (La.App. 5 Cir. 6/23/09), 19 So.3d 497, 508, writ denied, 09-1742 (La.3/26/10), 29 So.3d 1249 (citation omitted).
For instance, in Cochran, this Court found that the evidence was sufficient to support the jury’s finding that the defendant had the specific intent to kill or inflict great bodily harm when the victim sustained a 3/£-inch deep slash on the left side of his neck, severing his carotid artery and jugular vein. Cochran, 09-85 at 18-19, 19 So.3d at 508.
Here, defendant admitted, that he stabbed the victim. As a result of the stabbing, the victim sustained one or more sharp-force injuries to her neck. The most severe of these was 4½ inches deep, penetrating through the muscles on the left side of her neck, through her carotid artery, her thyroid gland, through the muscles on the right side of her neck, and piercing the plural cavity surrounding her right lung.
In view of the severity of the victim’s injuries and the manner in which they were inflicted, this Court finds, as the Cochran court did, that any rational trier of | Jact would have found that defendant acted at least with the specific intent to inflict great bodily harm, if not to kill. Thus, this Court finds that the evidence was sufficient to support the jury’s finding that defendant was guilty of second degree murder.
However, defendant argues that manslaughter, not second degree murder, was supported by the evidence. Manslaughter is a homicide that would be a first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that the average person’s blood would have cooled, at the time the offense was committed. La. R.S. 14:31(A)(1). “Sudden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors that may reduce the grade of the offense. State v. Bauman, 08-1169, p. 11 *783 (La.App. 5 Cir. 5/12/09), 15 So.3d 177, 185, writ denied, 09-1533 (La.4/23/10), 34 So.3d 300.
In order to be entitled to the lesser verdict of manslaughter, the defendant is required to prove the mitigatory factors by a preponderance of the evidence. Bauman, 08-1169 at 11, 15 So.3d at 185. Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. Id. (citation omitted). The question for this Court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. Id. (citations omitted).
Here, evidence showed that defendant knew well in advance of the homicide that the victim had begun a relationship with another man. Defendant himself 19admitted that before the day of the murder, he had seen hiekeys on the victim’s neck which he did not give her. Defendant further admitted that he had seen the victim in the park with another man. Ms. Rodriguez testified that, on the night before the murder, defendant believed that the victim was with another man. She testified further that she told defendant that he and the victim could not be together, and that defendant just needed to “leave it at that.” After this conversation, Ms. Rodriguez then dropped defendant off at his house. There, several hours later, at around 3:00am, Mr. Lopez arrived home to find defendant cooking. Mr. Lopez testified that defendant told him that he, defendant, was leaving the house. Mr. Lopez further testified that after this, he and defendant shared a drink and that he told defendant that leaving was a good idea because defendant and the victim had been fighting. In light of this evidence, this Court finds that a reasonable trier of fact could have found that defendant did not sufficiently prove that this act occurred in a sudden heat of passion. Therefore, this assignment of error has no merit.
In his second assignment of error, Defendant also argues that the trial court erred when it failed to declare a mistrial after evidence of other crimes of defendant was admitted at trial. Specifically, defendant argues that the trial court erred by not declaring a mistrial when Ms. Martinez testified that she had seen bruises on her sister, “[l]ike, 50 times or more. I don’t know.” The State responds to this assignment by arguing that defendant waived his right to appeal this issue because defendant did not make a contemporaneous objection to this testimony.
Indeed, La.C.Cr.P. art. 841(A) requires that “[a] irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence ...” This Court has held that to preserve the right to seek appellate review of an alleged trial court error, a party must state an objection contemporaneously with the 1 moccurrence of the alleged error, as well as the grounds for that objection. State v. Smith, 11-638, p. 14 (La.App. 5 Cir. 3/13/12); 90 So.3d 1114, 1123 (citation omitted). An objection made after the evidence is before the jury is too late. Id. The contemporaneous objection rule is also applied to motions for mistrials. Id., accord State v. Williams, 03-1773, p. 6-7 (La.App. 3 Cir. 6/2/04); 878 So.2d 765, 769-770.
Here, between Ms. Martinez’s “50 bruises” testimony and defendant’s objection and motion for a mistrial, there were twenty-two questions, the witness was given a water break, an off-the-record discussion was held, and the defense lodged two unrelated objections. Under these facts, this Court finds that the defendant did not, as *784 required, contemporaneously object to the perceived error and move for a mistrial. Therefore, this assignment of error was not preserved for appeal.
In his third assignment, defendant additionally assigns as error, the trial court’s refusal to suppress the statement he made after he was taken into custody. Defendant argues that his statement should have been suppressed both because he was unable to understand his Miranda rights as they were explained to him and because police did not honor his right to remain silent.
The determination of whether a defendant has been adequately informed of his rights is one of fact that this Court will not disturb on review absent manifest error. Smith, 11-638 at 9, 90 So.3d at 1120-21. A trial court’s conclusions on the credibility and weight of the testimony relating to the voluntary nature of the defendant’s confession are accorded great weight and will not be disturbed unless they are not supported by the evidence. Id. In reviewing a trial court’s ruling on a pretrial motion to suppress, an appellate court may review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing. Id.
InBefore an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived . his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. Id. A determination as to voluntariness of a statement is made on a case-by-case basis and is based upon a totality of the circumstances. Id.
Here, defendant was twice advised of his rights in his native language of Spanish by Detective Canas. Defendant was first advised of his rights soon after he had arrived at the police station and began making unsolicited inculpatory statements. Defendant was again advised of his rights by Detective Canas before a later questioning by the lead investigator, Detective Russ. This second time defendant was advised, was with a rights of arrestee form, which Detective Canas verbally translated into Spanish. Defendant indicated to the officers that he understood his rights both orally and by signing the form.
On appeal, defendant argues that he did not understand the Spanish as spoken by Detective Canas because he, defendant, speaks a Honduran dialect of Spanish and Detective Canas speaks a Columbian dialect of Spanish. While there may be material differences between Honduran and Co-lumbian Spanish, defendant has alerted this Court to none of them. Further, Detective Canas testified that in his twelve years of law enforcement experience that he has acted as a translator many times. Given these facts, this Court finds that a reasonable fact finder could find that defendant was properly advised of his Miranda rights before giving his statement.
Defendant further argues that officers did not honor his right to remain silent after he invoked it shortly after arriving at the police station. When a defendant 112exercises his privilege against self-incrimination, the validity of any subsequent waiver depends upon whether police have “scrupulously honored” his right to remain silent. State v. Stein, 04-23 (La. App. 5 Cir. 4/27/04), 874 So.2d 279, 295 writ denied, 04-1345 (La.11/8/04), 885 So.2d 1122 (citations omitted). A determination of whether police have scrupulously honored an accused’s right to silence requires consideration of a totality of the *785 circumstances. Id. Factors to be included in this assessment are: who initiates further questioning, although police are not barred from reinitiating contact after the defendant invokes his right to remain silent; whether there has been a substantial delay between the original request and subsequent interrogation; whether signed Miranda waivers are obtained; and whether the later interrogation is directed at a crime that was not a subject of the earlier questioning. Id.
Defendant testified that between six and seven hours passed between the time that he invoked his right to remain silent and the time that police again began questioning him. Further, before the second questioning, the evidence shows that Detective Canas again translated the Miranda rights for defendant and that defendant indicated he understood those rights both verbally and by signing the waiver of rights form. In light of these facts, this Court finds that officers did scrupulously honor Mr. Madrid’s right to remain silent. Therefore, the trial court did not err in refusing to suppress Mr. Madrid’s statement and this assignment of error has no merit.

CONCLUSION

Finally, this Court has conducted a review for errors patent according to La. C.Cr.P. art. 920. This review revealed no errors patent. In light of the foregoing, this Court holds that the judgment of the trial court is hereby affirmed.

AFFIRMED