HANS J. LILJEBERG, Judge.
^Defendant appeals her conviction and sentence for attempted possession of marijuana with the intent to distribute. For the following reasons, we affirm defendant’s conviction and sentence, and we remand the case for correction of the Uniform Commitment Order.

PROCEDURAL HISTORY

In October of 2012, defendant, Kristin H. Curry, was charged by bill of information with possession of marijuana with the intent to distribute, in violation of LSA-R.S. 40:966(A) (count one), and possession of counterfeit currency, in violation of LSA-R.S. 14:72.2 (count two). Defendant was arraigned and entered a plea of not guilty to the charges.
The matter proceeded to trial on June 27, 2013. On June 28, 2013, a 12-person jury found defendant guilty on count one of the lesser offense of attempted possession of marijuana with the intent to distribute and not guilty on count two.
|sOn July 3, 2013, defendant filed a motion for new trial, which the trial court heard and denied on July 8, 2013. After the denial of her motion, defendant waived sentencing delays, and the court sentenced her to three years imprisonment at hard labor, suspended two years, and placed her on active probation for those two years. As a condition of her probation, defendant was ordered to serve one year of home incarceration following her release from prison. Defendant appeals.

FACTS

At trial, defendant testified that on the afternoon of August 31, 2012, she received a telephone call from her estranged husband, Kevin Curry, who said he would be able to provide her with some money for child support. At this time, defendant and Mr. Curry were going through a divorce and child custody proceedings, which were still ongoing at the time of trial. According to defendant, she was to meet Mr. Curry at The Discount Depot, a convenience store in Gretna, Louisiana, for him to give her the child support money. However, at the last minute, Mr. Curry informed *735 her that he would be unable to make it but somebody would be there in his place.
When defendant arrived at the convenience store, she recognized an associate of Mr. Curry, who approached her vehicle. She allowed him to get into her vehicle, where he gave her money and a bag of marijuana. According to defendant, she accepted the money, but she gave him back the marijuana and told him that she did not want it. Then, at this individual’s direction, defendant entered the store to purchase a scale.
Jatinder Singh was working at The Discount Depot on the night of August 31, 2012. He testified that defendant tried to purchase a postal scale from him, but he called the police when he suspected the money she was using was counterfeit. At approximately 7:00 p.m., Detective Dominick Sciortino of the Gretna Police ^Department proceeded to the store in response to Mr. Singh’s complaint. When the detective arrived, Mr. Singh flagged him down and indicated that the woman who had tried to buy merchandise using the counterfeit bills was in a van attempting to leave the parking lot. Detective Sciortino and another officer approached the van on foot and saw through the open driver’s window that defendant was seated in the driver’s seat with the vehicle in “drive,” intending to pull out of a parking spot. The officers ordered her to exit the vehicle. As she did, Detective Sciortino detected an “overwhelming” odor of unburned marijuana. In response, the officers detained defendant and advised her of her rights.
Soon thereafter, a K-9 unit arrived on the scene, and the dog alerted to a diaper bag on the floorboard behind the driver’s seat. Detective Sciortino seized the diaper bag in which he found two clear plastic bags of green vegetable matter, which was subsequently determined to be marijuana. One bag contained 455 grams, and the other bag had 32 grams. Next to the diaper bag on the floorboard, the detective also located a small metal scale.
Detective Sciortino questioned defendant regarding the counterfeit currency and marijuana. In response, defendant handed over six $20.00 bills and explained that she had obtained the currency from her marijuana supplier. According to Detective Sciortino, defendant further stated that she was unemployed at the time, had a newborn child, and was selling the marijuana to make money. However, at trial, defendant denied that she ever said these things. Suspecting the bills were indeed counterfeit, Detective Sciortino contacted the U.S. Secret Service office, and Special Agent Brian Rossitto responded to the scene. Agent Rossitto confirmed that the bills were counterfeit based on his assessment of the serial numbers as well as the texture and quality of the paper. Defendant was placed under arrest.
Is At trial, the basis of defendant’s defense was that she was set-up by her ex-husband. Defendant testified that she has a temporary restraining order against Mr. Curry and that he has tried to “set her up” by planting drugs in her vehicle on more than one Occasion. The defense called Officer Marcus Dubuclet of the Gretna Police Department, who testified that in October of 2012, Mr. Curry lodged a complaint that defendant was selling narcotics. Officer Dubuclet confronted defendant with this information and obtained her consent to search her vehicle. Pursuant to a tip that drugs would be located in the trailer hitch of her vehicle, the officers searched there and recovered narcotics. During the search, the officers observed Mr. Curry circling the block several times. According to Officer Dubuclet, this roused their suspicions and prompted them to stop Mr. Curry’s vehicle, at which point a computer *736 search revealed a restraining order prohibiting him from contacting or coming within a certain distance of defendant. Consequently, Mr. Curry was arrested for violating the restraining order.

LAW AND DISCUSSION

In defendant’s first assignment of error, she argues that the trial court erred in failing to find that the State violated the rules of discovery when it failed to provide the defense with certain details of a statement defendant allegedly gave to Detective Sciortini at the time of her arrest. These details were that defendant’s marijuana supplier was located in the Magnolia Projects in New Orleans.
In response, the State maintains that this issue has not been preserved for appellate review since the defense did not lodge a contemporaneous objection to the “Magnolia Projects” reference. In any event, the State contends there was no discovery violation where the defense had been informed of the contents of defendant’s statement at a pre-trial motion hearing.
|fiAt trial, during the direct examination of Detective Sciortini, when the detective stated that he had obtained a statement from defendant regarding the counterfeit currency, defense counsel objected on the ground that this topic was not included in any statements previously provided to the defense. Defense counsel maintained that the only statement by defendant which was contained in the detective’s incident report and which was raised in pretrial motions was that she was the mother of a newborn child and was selling to provide for her children. The court overruled the defense’s objection.
Then, on cross-examination, Detective Sciortini testified that defendant told him her marijuana supplier was from the Magnolia Projects in New Orleans. The detective acknowledged that he did not include this in his incident report because it regarded territory, i.e., New Orleans, outside of his jurisdiction. The detective added that he forwarded this information to the appropriate authorities. Defense counsel did not object to Detective Sciortini’s testimony regarding defendant’s marijuana supplier.
LSA-C.Cr.P. art. 841(A) requires that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.... ” This Court has held that to preserve the right to seek appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. State v. Madrid, 12-410, pp. 9-10 (La.App. 5 Cir. 12/11/12), 104 So.3d 777, 783.
On appeal, defendant alleges that the trial court erred in admitting the portion of defendant’s statement that her marijuana supplier was from the Magnolia Projects because this had not been previously provided in discovery. However, the defense did not contemporaneously object to this testimony, and the record shows that defense counsel actually elicited this information. Furthermore, 17the record reflects that other references to defendant’s marijuana supplier were elicited by defense counsel and were not met with an objection from the defense.
In consideration of the foregoing, this issue has not been preserved for appellate review. Accordingly, we decline to address the merits of defendant’s first assignment of error.
In defendant’s second assignment of error, she argues that the trial court erred in denying her motion for new trial on the ground that she was not permitted to present a defense. She asserts that her *737 defense was based on her assertion that her ex-husband, Kevin Curry, set her up in order to gain an advantage in their child custody proceedings, but the trial court did not allow her to present effective evidence in support of this position. Specifically, defendant complains that she should have been allowed to introduce evidence of the fact that Mr. Curry’s civil attorney was present in the courtroom for the entire duration of defendant’s trial and/or to call Mr. Curry’s civil attorney to the stand.
In response, the State contends that the trial court did not err in refusing to allow Mr. Curry’s civil attorney to testify at defendant’s trial because such testimony would have violated LSA-C.E. art. 507[1] and because evidence of the attorney’s presence was not relevant to the instant criminal prosecution.
Near the end of trial, defense counsel requested that the court take judicial notice of the fact that Mr. Curry’s civil attorney had been present in the courtroom Rfor the duration of the trial. The trial court agreed to take judicial notice of this fact. Yet, when defense counsel indicated that he wished to call the attorney as a witness to identify herself and her presence in the courtroom, as well as reference the attorney’s presence in closing arguments, the State objected on the grounds of relevance. The court agreed and refused to allow the defense to call the attorney to testify. The defense objected.
After the trial, defendant filed a motion for new trial in which she raised the exclusion of this evidence as a basis for the motion. Defendant based her argument on LSA-C.Cr.P. art. 851(2), which provides that a new trial shall be granted when “[t]he court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error[.]” She argued that the exclusion of this evidence was prejudicial because it “would have further established Kevin Curry’s obsession and attempts to stalk and control defendant such that it would have made defendant’s claim that he set her up more probable than without said evidence.”
At the motion hearing on July 8, 2013, the trial court denied defendant’s motion for new trial, reasoning as follow: “[Wjhether or not the Court would have allowed the attorney to take the stand would have been — would have been confusing to the jury. So that’s the basis for the ... denial [of] the motion for new trial.”
On appeal, defendant argues that the exclusion of this evidence violated her right to present a defense since “[i]t would have been a very effective example to the jury of the defense’s argument that [Mr. Curry] went to extreme lengths to harass and stalk [defendant].”
*738 Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution guarantee a criminal defendant the right |flto present a defense. State v. Lirette, 11-1167, p. 19 (La.App. 5 Cir. 6/28/12), 102 So.3d 801, 813, writ denied, 12-1694 (La.2/22/13), 108 So.3d 763. However, this right does not require a trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. Id.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. art. 401. All relevant evidence is admissible, except as limited by the Code of Evidence and other laws, and all irrelevant evidence is inadmissible. LSA-C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403.
A trial court, in deciding the issue of relevancy, must determine whether the evidence bears a rational connection to the facts at issue in the case. Lirette, 11-1167 at 20, 102 So.3d at 813-14. The court’s determination regarding the relevancy and admissibility of evidence should not be overturned on appeal absent a clear abuse of discretion. Id.
In the instant case, the evidence was excluded because the trial court found it to be irrelevant. In making this determination, the court rejected defense counsel’s contention that Mr. Curry’s attorney was present only for the purpose of harassing defendant. The court reasoned that Mr. Curry’s attorney may have been present for a legitimate purpose relating to her representation of Mr. Curry in the ongoing child custody proceedings.
|]ftAlthough the presence of Mr. Curry’s attorney may have been relevant to child custody proceedings, the issue in this case is whether evidence of the attorney’s presence was relevant to defendant’s criminal prosecution such that its exclusion was erroneous. Thus, this Court must determine whether this evidence bore a rational connection to the facts at issue in the instant case.
Defendant was charged with possession of marijuana with the intent to distribute and possession of counterfeit currency. The defense argued that she was not guilty of these crimes because Mr. Curry set her up, planting the marijuana and counterfeit currency on her. To support this theory, the defense sought to portray Mr. Curry as relentlessly harassing defendant. For instance, the defense introduced evidence of another alleged set-up by Mr, Curry in which he allegedly stashed narcotics in defendant’s vehicle and then contacted the police. Another instance of Mr. Curry’s harassment, the defense sought to argue, was the presence of his attorney at defendant’s trial.
Based on our review of the record, we find that the trial court properly excluded evidence of the presence of Mr. Curry’s attorney during defendant’s trial. Defendant has not demonstrated, nor is it evident, how the presence of Mr. Curry’s civil attorney during defendant’s trial was part of a broader pattern of harassment. Defendant accused Mr. Curry, not his attorney, of harassing her. There is no evidence that Mr. Curry instructed his attorney to attend defendant’s trial to harass her. Nor is there any indication that the attorney displayed behavior that could be *739 considered harassment; rather, the record reflects that she was nothing more than a quiet observer. This is consistent with the trial court’s observation that she had an alternative legitimate purpose to be there: her representation of Mr. Curry in ongoing child custody proceedings.
[ t , Furthermore, the attorney’s presence bears no rational connection to the determination of defendant’s guilt on the charged offenses. In determining whether defendant possessed marijuana and counterfeit currency on August 31, 2012, the presence of Mr. Curry’s attorney in the courtroom during defendant’s trial had no tendency to make the existence of any element of the charged offenses more probable or less probable. See LSA-C.E. art. 401. As such, this evidence was not relevant.[2]
Accordingly, because the presence of Mr. Curry’s attorney was irrelevant and the evidence thereof was properly excluded, the trial court did not abuse its discretion in denying defendant’s motion for a new trial on this basis. This assignment of error is without merit.
Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 387 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. One error requiring corrective action was noted.
The “State of Louisiana Uniform Commitment Order” indicates that the adjudication date was July 8, 2013. However, the record indicates that the jury returned its verdict on June 28, 2013. In order to ensure an accurate record, we remand this matter and order the Uniform Commitment Order be corrected to reflect the correct adjudication date. See State v. Long, 12-184, p. 10 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. Further, we order the Clerk of Court for the | ^district court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections’ legal department.

DECREE

For the foregoing reasons, defendant’s conviction and sentence are affirmed. However, we remand the case for correction of the Uniform Commitment Order. Further, we order the Clerk of Court for the district court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections’ legal department.

CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. LSA-C.E. art. 507 provides in pertinent part:
A. General rule. Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any criminal investigation or proceeding where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless the court after a contradictory hearing has determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:
(1) The information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense.
(2) The purpose of seeking the information is not to harass the attorney or his client.
(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.
(4) There is no practicable alternative means of obtaining the information.

. We further note that the defense’s theory of a set-up seems internally flawed. It can be presumed that the goal of Mr. Curry’s alleged set-up was for defendant to be caught with drugs. However, there was no evidence that Mr. Curry’s plan provided for defendant to be caught. There was no evidence that Mr. Curry contacted the police after he planted the marijuana and currency on defendant. Rather, the evidence indicates that the police were contacted by Mr. Singh when defendant presented him with the counterfeit currency, and there was no evidence connecting Mr. Curry to Mr. Singh. Thus, if this was in fact a setup, its success wholly depended on factors outside of Mr. Curry’s control, i.e., Mr. Singh recognizing the currency as counterfeit and calling the police. Such a plan is notably dissimilar from Mr. Curry's other alleged setup, in which he contacted the police after stashing narcotics in defendant's vehicle.