MICHAEL E. KIRBY, Judge.

hSTATEMENT OF CASE

On April 3, 2007, the State filed a bill of information charging Kevin George and two co-defendants with possession with intent to distribute cocaine.[1] George pled not guilty at arraignment. Motions were heard on June 26, 2007, and the trial court denied defendant’s motion to suppress the evidence and found probable cause.
Trial commenced on August 30, 1997. During voir dire, the State exercised nine challenges for cause and twelve peremptory challenges. The first jurors removed for cause were Mr. Tyrone Alonzo and Mr. Prosper Williams. Following their removal, voir dire examination was completed without further objection. The jury found the defendant guilty as charged.
*177 On October 4, 2007, the state filed a multiple bill of information alleging the defendant to be a second felony offender. On November 9, 2007, following a hearing-on the multiple bill, the trial court found the defendant to be a second felony offender. A pre-sentence investigation was ordered. On February 21, 2008, the trial court sentenced the defendant to thirty-five years at hard labor without 12benefit of probation or suspension of sentence. Defendant’s motion for appeal was granted.

STATEMENT OF FACT

Testimony at trial reflects that on February 1, 2007, Officer Brian Elsenhorn of the New Orleans Police Department was conducting surveillance at the intersection of Mandeville Street and North Derbigny Street. From a concealed position, Elsen-horn observed two individuals in front of a store located at the intersection walking back and forth and looking around in all directions. Elsenhorn observed two unknown individuals walk up Mandeville Street and commence a brief conversation with the defendant. One of these unknown subjects handed the defendant some money. George then retrieved a plastic bag from his jacket pocket and handed it to that individual. These two unknown subjects then walked away. George handed the currency to the subject later identified as Dwayne Harvey, who had been standing back and looking about in all directions.
Thereafter, a green van drove into the area and stopped. George approached the van and spoke to the driver. The driver handed some money to Harvey, and George retrieved a plastic bag from his coat and handed it to the driver. The van drove away. Officers Steven Keller and Travis Ward attempted to stop the van after it left the area but were unsuccessful after losing site of the vehicle on the interstate.
Elsenhorn continued his surveillance for some time until two marked police vehicles, unconnected with the operation, happened to approach the intersection. El-senhorn heard Harvey inform George that police were in the area. The two men j^then entered the store. After the vehicles had passed, George and Harvey exited the store and nervously looked around. At this point, George called to a female, later identified as Ashley Williams, who had been seated on some steps of a nearby house, to hurry up and bring the bag. Williams took a denim colored knapsack to George and opened it. George removed two medium sized plastic bags from his coat and placed them in the knapsack. Williams then handed the knapsack to Harvey. Believing that the subjects were about to leave the area, Elsenhorn alerted members of his take down team to apprehend the subjects. Armed with descriptions of George and Williams, Officers Mark Boudreau and Jason Samuel apprehended them without incident in the same block as the store.
Officers Keller and Ward were responsible for apprehending Harvey. When they approached Harvey in the 2200 block of North Derbigny Street, he fled down an alleyway and hid underneath a house. The officers were able to remove Harvey from underneath the house and place him under arrest. The knapsack was also recovered. Two large and two medium sized plastic bags containing nearly two pounds of marijuana were found inside the knapsack. Numerous small orange tinted plastic bags containing marijuana were located inside the larger bags.
Officer Elsenhorn then came and identified the three subjects as the same ones he had observed at the intersection, and they were placed under arrest. Elsenhorn also identified the two medium sized plastic bags as the ones he observed George place *178 into the knapsack. Officer Boudreau searched Harvey and recovered $790.00 in U.S. currency from his pants pocket.
Officer William Giblin, a criminalist with the New Orleans Police Department Crime Lab, testified that he tested the substance recovered in the knapsack and that it tested positive for marijuana.

¡¿ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1

In a wide ranging assignment of error, defendant contends that the trial court erroneously dismissed two prospective jurors by granting two challenges for cause entered by the State. Defendant further suggests that he was denied an impartial jury as a result of the conduct of the State’s voir dire.
The purpose of voir dire is to determine the qualifications of prospective jurors by testing their competency and impartiality and to assist counsel in articulating intelligent reasons for exercise of cause and peremptory challenges. State v. Ball, 2000-2277, p. 23 (La.01/25/02), 824 So.2d 1089, 1110, cert. denied, 537 U.S. 864, 123 S.Ct. 260, 154 L.Ed.2d 107. Challenges for cause are governed by La. C. Cr. P. art. 797, which states in pertinent part that the state or the defendant may challenge a prospective juror for cause on the grounds that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
4) The juror will not accept the law as given to him by the court;
A trial court is vested with broad discretion in ruling on challenges for cause, and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Ball, supra.
|5The record reflects that the State entered a challenge for cause during voir dire against prospective juror Alonzo. The challenge was entered after Juror Alonzo stated that he could not accept eyewitness testimony in relation to possession of an object without accompanying fingerprint evidence. Both the trial court and defense counsel questioned prospective juror Alonzo further on the issue, and he maintained the position that anytime anyone possessed or touched an object that his fingerprints would be both present and identifiable. He further maintained that in the absence of such fingerprint evidence, he could not consider a guilty verdict. Juror Alonzo stated that if some other scientific evidence, such as DNA evidence was presented, it “might be sufficient” but that even in the instance of multiple eye-witness accounts of possession; he could not accept those accounts as evidence of guilt absent fingerprint evidence. Mr. Alonzo was unequivocal in his position.
Defendant suggests that the State sought a guarantee from Mr. Alonzo that he would convict on eye-witness testimony alone. However, the record reflects that the State only questioned Mr. Alonzo whether he could convict absent fingerprint evidence. Given Mr. Alonzo’s unwillingness to even consider eye-witness testimony of possession absent corroborating physical evidence, we find the trial court properly granted the State’s challenge and excused Mr. Alonzo.
Prospective juror Williams likewise expressed difficulty being able to consider *179 evidence of possession absent any fingerprint evidence being introduced, but ultimately, when asked if he could keep an open mind and consider other evidence of possession he stated, “I guess I could.”
However, Juror Williams also stated that he had difficulty accepting testimonial evidence from police officers. Juror Williams recounted two incidents | (¡involving the police wherein he believed that the officers acted improperly. One instance involved a speeding ticket which he believed he received unfairly and the other involved his son being stopped in his car. Asked whether he would hold those instances against the officers who would be testifying, he stated that it was a “[possibility.” Asked whether he could judge the credibility of each witness, regardless of whether they were a police officer or a lay witness, as an individual, Mr. Williams stated, “I think I can.”
Defense counsel then pressed Juror Williams on whether he could judge the testimony of the police who would testify as he would any other witness before making a determination of the believability of their testimony, and again Juror Williams stated that it was only a possibility that he could do so. At that point, the trial court dismissed Mr. Williams.
Defendant contends that Mr. Williams’ responses did not call for removal as he only expressed a preference for certain testimony and further indicated a willingness to follow the law. Review of Williams’ voir dire examination clearly reflects that he was ambiguous as to whether he could be impartial and judge a police officer’s testimony as he would any other witness. Accordingly, Mr. Williams was properly excused.
Defendant further contends that the course and conduct of the State’s voir dire examination in referencing specific facts from the case improperly influenced the jury by essentially requiring a commitment from the jurors that they would convict the defendant on the facts as outlined.
In State v. Ball, the Louisiana Supreme Court discussed the proper scope of voir dire as follows:
|7The scope of voir dire is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal absent a clear showing of an abuse of discretion.
Nevertheless, voir dire does not encompass unlimited inquiry by defendant into all possible prejudices of prospective jurors, including their opinions on evidence, or its weight, hypothetical questions, or questions of law that call for any prejudgment of supposed facts in the case. Louisiana law clearly establishes that a party interviewing a prospective juror may not ask a question or pose a hypothetical which would demand a commitment or pre-judgment from the juror or which would pry into the juror’s opinions about issues to be resolved in the case. “It is not proper for counsel to interrogate prospective jurors concerning their reaction to evidence which might be received at trial.” State v. Williams, 230 La. 1059, 89 So.2d 898, 905 (1956).
Id., 2000-2277, p. 23, 824 So.2d at 1100.
The record reflects that the State’s reference to specific facts of the case was quite limited. The State alerted the prospective jurors to the fact that no fingerprint evidence would be presented. Additionally, during the voir dire examination of Mr. Williams, the trial court elicited from the prosecutor the fact that the items involved included a backpack and a large plastic bag of marijuana contained therein. These are the only specifics of the case presented.
Neither the prosecutor’s limited inquiry regarding the lack of fingerprint evidence nor the few facts of the case presented *180 represent an attempt by the State to elicit a prejudgment of the case from the prospective jurors. The State simply asked the prospective jurors whether, assuming the State proved the case beyond a reasonable doubt but did not submit fingerprint evidence, would they be able to return a guilty verdict. Such an inquiry is not improper, and it does not violate the principles expressed in Bull, supra. Defendant’s assignment of error lacks merit.

¡¿ASSIGNMENT OF ERROR NUMBER 2

By this assignment, defendant contends he received an excessive sentence. Defendant also contends that his sentence is disproportionate to Mr. Harvey’s sentence. In State v. Smith, 2001-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4, the Supreme Court set forth the standard for evaluating a claim of excessive sentence:
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to ... excessive ... punishment.” (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cam, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf. State v. Phillips, 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
In State v. Batiste, 2006-0875, p. 18 (La. App. 4 Cir. 12/20/06), 947 So.2d 810, 820, this Court stated:
An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Landry [2003-1671, (La. App. 4 Cir. 3/31/04), 871 So.2d 1235]; State v. Trepagnier, 97-2427 (La. App. 4 Cir. 9/15/99), 744 So.2d 181. However, as noted in State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical [ ¡[Compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Ait. 894.1. State v. Lanclos, 419 So.2d 475 (La. 1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
Additionally, if adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
At the sentencing hearing, the trial court reviewed defendant’s lengthy criminal history. In 1998, as a juvenile, Mr. George was adjudicated a delinquent and received a three year sentence for unauthorized use of a movable. In 1999, Mr. *181 George was adjudicated a delinquent in two other cases involving felony possession of stolen property. Three year sentences were imposed in both instances.
In 1999, as an adult, Mr. George was found guilty of illegal use of a firearm and sentenced to two years. In 2001, he pled guilty to possession with intent to distribute marijuana. In 2003, the defendant was twice convicted of possession of marijuana and was also convicted of the use of a controlled dangerous substance in the presence of a minor. In 2004, the defendant was again convicted of possession of marijuana.
At the sentencing hearing, the trial court reviewed several other factors which served as the basis for the sentence imposed. Initially, the court looked to the significant amount of marijuana and the large amount of money recovered in | ^concluding that the defendant was engaged in a large scale narcotics operation. The court was also concerned by the defendant’s previous involvement with weapons. The fact that after serving a two year sentence, the defendant involved himself repeatedly with marijuana caused the court even greater concern.
The court then addressed its ultimate concern which was the negative effect Mr. George’s activities had on the people in the area affected by his activities. The court expressed its dismay that while other members of that neighborhood where working to put their lives back together, Mr. George’s contribution to the rebuilding effort was to sell marijuana.
Considering the defendant’s criminal history and the facts of this case, the sentencing judge properly tailored the punishment to fit this particular defendant and this particular crime. The judge deemed the defendant a danger to society, and the sentence imposed accomplishes the legitimate purpose of protecting society from further action by the defendant.
By comparison, Mr. George had a far more extensive criminal history then the defendant in State v. Jackson, 04-728 (La. App. 5 Cir. 12/14/04), 892 So.2d 71, who received a ten year sentence for the same offense. Mr. George’s criminal history is comparable to the defendant in State v. Esteen, 2002-1241 (La.App. 5 Cir. 04/29/03), 846 So.2d 167, 178, whose thirty-three year sentence was found not to be excessive where the defendant had a previous conviction for attempted armed robbery and possession of cocaine with intent to distribute, and the amount of marijuana involved was extremely small.
Furthermore, the defendant’s sentence is not disproportionate to the thirty year sentence his co-defendant received. Harvey had three prior felony convictions for simple robbery, possession of cocaine, and possession of cocaine |nwith intent to distribute, which is similar George’s previous criminal history. However, as noted by the trial court, Mr. George appeared to be the leader of the criminal enterprise, and, as such, it is appropriate that he received the lengthier sentence.[2] The defendant’s assignment of error lacks merit.

CONCLUSION

For the above reasons, we affirm the conviction and sentence.
AFFIRMED.
BELSOME, J., concurs in the result.

. George's co-defendant, Dwayne Harvey, pled guilty and was sentenced to thirty years at hard labor as second felony offender. The third co-defendant, Ashley Williams, remains at large.

. The defendant also suggests that his sentence was incorrectly imposed with a restriction against parole; however, review of the record reflects that no such restriction was imposed.