LILJEBERG, J,
| defendant appeals his conviction for sexual battery upon a juvenile under the age of thirteen. For the following reasons, we affirm..
FACTS AND PROCEDURAL HISTORY
On September 23, 2015, the Jefferson Parish District Attorney filed a bill of information charging defendant, Alejandro Bravo, with sexual battery upon a juvenile under the age of thirteen by touching the victim’s. genitals in violation of La. R.S. 14:43.1. On that same date, defendant was arraigned and pleaded not guilty. On May 16 and 17, 2016, the case was tried before a twelve-person jury, which found defendant guilty as charged.
On June 1, 20.16, defendant, filed a Motion for New Trial and a Motion to Declare Article 782(A) Unconstitutional Because It Allows For a Non-Unanimous Verdict. On June 2, 2016, the trial judge denied both motions. On June 6, 2016, the trial judge sentenced defendant to imprisonment at hard labor for thirty years without the benefit of parole, probation, or suspension of sentence and advised defendant of the sex offender registration requirements. The trial judge granted defendant’s motion for appeal on June 9,2016.
FACTS
On March 9, 2013, K.O. asked her mother-in-law, S.M., to take care of her young daughters, N.R. and V.O., so she could take her mother to a baby shower.[1] N.R. was seven years old at that time. S.M. and defendant, her live-in boyfriend of five years, picked up N.R. and V.O. from KO.’s house and brought them back to their apartment in Metairie. N.R. testified that she was sitting on the couch next to defendant while S.M. was on. a computer, located in the same room, searching for a video .they could watch. N.R. testified that defendant touched her on her vagina Land hurt her by putting his finger in her vagina. N.R. complained that this hurt and defendant moved his hand away.
N.R. also testified that defendant touched her “private’-’ before March 9, 2013. She remembered once that she and defendant were alone in the. kitchen at her grandmother’s house where she and her parents lived. N.R. stated she was sitting on defendant’s lap at the kitchen table. N.R. testified that defendant touched her “private spot” under, her panties and that it hurt..
N.R. also recalled that another time, they were in the living room at her great-grandmother’s home. She explained that her mother and father were on the couch and that defendant was “doing it” under the blanket. N.R. said that defendant did not hurt her that time. N.R. testified that it was hard to remember every time defendant did this to her and every detail from when she was seven years old; however, she noted that she would not lie about something so serious and that she was *1216 telling the truth about the times defendant touched her.
S.M. testified that when they arrived at her apartment on March 9, 2013, N.R. jumped onto defendant’s lap for a second, but S.M. told N.R. to get off. S.M. recalled saying in her statement that N.R. then said, “Don’t touch my hooha,” which meant “private” or “vagina” to N.R. S.M. testified that N.R. told her that defendant had touched her several times before, but that N.R. told her that it did not happen that day. S.M. also stated that defendant later told her nothing had happened. S.M. said she then called K.O. and told her what N.R. said about defendant touching her vagina. Afterward, S.M. took N.R. and V.O. home.
When N.R. arrived home, KO.’s husband spoke to N.R. and based on that conversation, K.O. decided to call 9-1-1. She explained that S.M. tried to stop her and asked her'to give defendant a week so he could run. While K.O. was calling 9-1-1, S.M. ran out of the door and got into her van. KOI overheard S.M. telling defendant on the phone to “get out now and run” because K.O. was calling the Rpolice. The police arrived at K.O’s home and after conducting interviews, they instructed K.O. to bring N.R. to the emergency room at Children’s Hospital.
Sergeant Terri Danna of the Jefferson Parish Sheriffs Office Juvenile Crime Division testified that, on March 11, 2013, she was assigned to follow-up on the investigation in the instant case. She further testified that she went to K.O.’s house the next day and talked to K.O., who told her that she sent her daughters to her mother-in-law’s apartment and that her mother-in-law .called her later in the afternoon to tell her that N.R. said that defendant touched her inappropriately. Sergeant Danna then went into N.R.’s bedroom and spoke to N.R. alone. When Sergeant Danna asked N.R. if she liked visiting S.M. and defendant, N.R. responded affirmatively, but said that sometimes defendant “digs in my private place and sometimes it hurts.”
Based on that information, Sergeant Danna scheduled an interview for N.R. at the Jefferson Children’s Advocacy Center, which occurred on March 27, 2013. Sergeant Danna monitored the interview in an adjacent office. She explained that N.R.’s statements at the Advocacy- Center were consistent with what N.R. told her on March 12, 2018, Afterward, Sergeant Dan-na obtained an arrest warrant for defendant; however, she was unable to arrest him because she could not find him. She spoke to S.M., who said' that defendant had moved and she did not know where he went. Sergeant Danna was unable to locate defendant through his employer and suspended the investigation pending defendant’s apprehension. Defendant was eventually apprehended in Minnesota in May 2015.
"Erika Dupepe testified that she was employed by the District Attorney’s Office and assigned to the Advocacy Center. Ms. Dupepe conducted a videotaped interview of N.R. at the Advocacy Center. In that videotaped interview, N.R, explained that defendant put his finger in her vagina more than one time. N.R. asserted that sometimes it happened in the kitchen at her house when she was |4sitting on his lap. N.R. explained that defendant was sitting on a chair at a table and he touched her vagina under the table. N.R. stated that the last time it happened was at S.M.’s apartment while they were sitting on the couch in the living room. At that time, N.R. was sitting on defendant’s lap and S.M. was looking at her computer. She stated that defendant “digged” in her vagina on the couch.
Defendant testified that on the day of the alleged incident, he was sitting with S.M. on the couch. S.M. told N.R. to pick *1217 up her toys, but she would not. Defendant explained that N.R: stood up, came by him, and tried to sit on his .lap, but S.M. said, “No.” Defendant stated that N.R. kept walking, stood up by his side, and said, “Why are you touching me?” He testified that he did not touch N.R. inappropriately. Defendant said that S.M. screamed, “What did you say?,” and N.R. said defendant touched her. Defendant recalled S.M. stating that was not true and that she did not see anything. Afterward, S.M. brought N.R. to the bathroom and then home.
Defendant testified that shortly thereafter, he received a call from S.M. informing him that N.R.’s family called the police. Defendant was afraid and called his friend, who picked him up. He claimed he was in Louisiana for approximately six weeks, after which he left. Defendant stated that he got jobs in New York and Minnesota, respectively, and stayed one year in each place. Defendant claimed he left Louisiana because he had two daughters, one of whom had many medical bills. Defendant testified that he never touched N.R. inappropriately at any time and that he was never alone with N.R.
LAW AND DISCUSSION
In his first assignment of error, defendant argues the trial judge erred by allowing the State to ask prospective jurors hypothetical questions during voir dire, which sought a commitment regarding evidence and issues to be decided in the Lease. Defendant specifically objects to questions regarding (1) whether the prospective jurors could rely on witness testimony in the absence of DNA evidence; (2) whether the prospective jurors would expect there to be physical evidence in a crime of a sexual nature and whether they would need such evidence in order to find someone guilty as charged; (3) whether the prospective jurors would be less likely to believe the victim in this case if the victim did not immediately report the crime; and (4) whether the trial judge improperly asked a prospective juror if she would be able-to find a person guilty based upon the testimony of one witness or one victim.
During voir dire, the State told the prospective jurors they would not hear DNA evidence in this case and asked them whether they could rely on witness testimony in the absence of DNA evidence. Defense counsel objected, arguing that the State was getting into possible facts of the case. The trial judge overruled the objection.
The record also reflects that later in voir dire, the State asked prospective jurors whether in a crime of a sexual nature, they would expect to see physical evidence, whether the prospective jurors would need physical evidence in order to find someone guilty as charged, and whether anyone would expect there to be DNA evidence in a sexual battery' case where an adult touched a child’s penis. The State also asked prospective jurors if the victim in this case did not immediately report the crime, would that make thém less likely to believe her. Defense counsel did not lodge objections to any of these inquires.
Lastly, the record indicates that during a bench conference, the trial judge asked whether there were any challenges for cause, and the State responded that -it was challenging Ms. Bodden, a prospective juror. The trial judge asked Ms. Bodden to approach the bench and to confirm whether she said that she could not find'a defendant guilty based on the testimony of one witness or victim. Ms. |fiBodden confirmed that this was her position. The trial judge asked defense counsel if he had any questions. Defense counsel stated that he objected to the form of the question because there would be more- than one witness testifying in the instant matter, and the trial judge noted his objection.
*1218 .In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841; State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949, writ denied, 02-2335 (La. 10/3/03), 855 So.2d 294. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity, allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. Id. Also, a defendant is limited to the grounds for objection that he articulated in the trial court, ’ and a new’ basis for the objection may not be raised for the first time on appeal. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 594.
 ..In the instant case,, the record indicates that defense counsel only lodged an objection to the State’s, inquiry as to whether the prospective jurors could rely on witness testimony in the absence of DNA evidence. He did not lodge objections to the State’s other inquiries regarding other physical evidence and the failure to immediately report a crime, which he now raises on appeal.
Additionally, with respect to the trial judge’s question to Ms. Bodden, defense counsel only objected to the form of the question asked by the trial judge based on counsel’s position that the hypothetical was inaccurate because more than one witness was expected to testify at trial. On appeal, defendant now contends the trial judge’s question was improper because his hypothetical sought, a commitment from the prospective juror on an issue to be decided at trial. This is different from the ground raised , during voir dire. Therefore, we find that |7defendant only, preserved the first issue regarding the DNA evidence for appeal and all other issues raised regarding the voir dire questions are waived.
The Sixth' Amendment of the United States Constitution guarantees the accused the right to a trial by an impartial jury. State v. Nelson, 09-807 (La.App. 5 Cir. 3/23/10), 39 So.3d 658, 661. Included in this right to an impartial jury is the right to an adequate voir dire to identify unqualified jurors. United States v. Beckner, 69 F.3d 1290, 1291 (5th Cir. 1995). Article I, § 17(A) of the Louisiana Constitution grants a criminal defendant the right to a full ahd complete voir dire. “The court, the state, and the defendant shall have the right to examine prospective jurors.” La. C.Cr.P. art. 786. The purpose of voir dire is to give counsel the opportunity to determine the qualifications of prospective jurors by testing their competency and impartiality and to formulate’ reasons for cause and peremptory challenges. State v. Ball, 00-2277 (La. 1/25/02), 824 So.2d 1089, 1110, cert. denied, 537 U.S. 864, 123 S.Ct. 260, 154 L.Ed.2d 107 (2002).
 Although a court has discretion to restrict voir dire, it must nevertheless afford the attorneys wide latitude in examining prospective jurors as a means of giving effect to an accused’s right to a full voir dire. State v. Thibodeaux, 98-1673 (La. 9/8/99), 750 So.2d 916, 924, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). It is permissible for voir dire questions to “reasonably explore the juror’s potential prejudices, predispositions or misunderstandings relevant to the central issues of the particular case.” State v. Duplessis, 457 So.2d 604, 606 (La. 1984). Nevertheless, Louisiana law provides that a party interviewing a prospective juror may not ask a question or pose a hypothetical which would demand a commitment or pre-judgment from the juror or which would pry into the juror’s opinions about issues to be resolved in the case. Id.
*1219 The trial court is granted broad discretion in regulating the conduct of voir dire, and its rulings will not be disturbed on appeal absent a clear showing of an | Sabuse of discretion. La. C.Cr.P. art. 786; Ball, 824 So.2d at 1110. In, eyaluating the fairness of the trial judge’s ¡ruling, the entire voir dire examination, should be considered. State v. Housley, 05-502 (La.App. 5 Cir. 1/31/06), 922 So.2d 669, 662, writ denied, 06-1183 (La. 11/17/06), 942 So.2d 531.
In State v. Munson, 12-327 (La.App. 5 Cir. 4/10/13), 115 So.3d 6, writ denied, 13-1083 (La. 11/22/13), 126 So.3d 476, during voir dire, the State explained the law regarding convictions based on witness testimony alone without corroborating physical evidence to prospective jurors. The State then questioned prospective jurors about their ability to apply this law since it was a relevant issue in the case. This Court found that the trial court did not allow improper hypothetical questioning because the State did not seek to acquire any prejudgment conclusions, concerning the facts of the case. Id. at 13.
In State v. Mitchell, 13-426 (La.App. 3 Cir. 11/6/13), 125 So.3d 586, writ denied, (La. 6/20/14), 141 So.3d 807, the State asked prospective jurors if they could convict based on eyewitness testimony alone and defense counsel objected ' on the grounds that the question was an improper hypothetical. The trial court overruled the objection. On appeal, the Third Circuit found the State’s questions wére permissible in order to allow the State to determine whether the prospective jurors could follow the law that a positive identification by a single witness was sufficient to support a conviction. Id. at 598.
Also, in State v. George, 08-1115 (La. App. 4 Cir. 1/28/09), 4 So.3d 175, 179-180, the State told the jurors that no fingerprint evidence would be presented and asked prospective jurors if they could return a guilty verdict if the- State proved the case beyond a reasonable doubt, .but did not submit fingerprint evidence. The Fourth Circuit concluded that such an inquiry was not improper and did not violate the proper scope of voir dire. Id. at 179-80,
Ijn the instant case, the record reflects that during ,voir dire, the State told the prospective jurors that they would not hear DNA evidence in this case and asked them whether they could rely on witness testimony in the absence of DNA evidence. Defense, counsel objected, arguing that the State was getting into possible facts of the case. Similar to Munson and George, supra,, the State in the instant case sought to evaluate the prospective jurors’ ability to apply the law regarding witness testimony in the absence of DNA evidence.[2] As such, we find the State did not seek to acquire any pre-judgment conclusions concerning the facts of the instant ease and did not improperly allow hypothetical questioning. Therefore, this assignment of error is without merit. .
In his second assignment of error, defendant argues the trial judge erred by denying his motion challenging the constitutionality of La. C.Cr.P. art. 782(A), which provides that ten of twelve jurors must concur to render a verdict in cases where punishment is necessarily confinement at hard labor. He further argues that a non-unanimous verdict violates due pro *1220 cess and the U.S. Sixth and Fourteenth Amendments.
The' State contends this claim should not be considered on appeal because defendant did not raise the issue prior to trial, and further failed to object when the trial court charged the jury on the voting requirements and when the jury returned its verdict. The State further responds that defendant failed to serve the Louisiana Attorney General with the motion he filed after trial. In addition, the record contains no reference tó or appearance by a representative of the Office of the Louisiana Attorney General at the post-trial hearing.[3] The State finally contends that even if defendant properly preserved this issue for review, defendant would | mstill not be entitled to relief because the United States Supreme Court has determined that the United States Constitution does not require unanimous jury verdicts in felony criminal trials conducted in state court, and the argument has similarly been rejected by numerous Louisiana courts.
The record indicates' ten jurors found defendant guilty of sexual battery on a victim under the age of thirteen years and two jurors found defendant not guilty. Defendant did not challenge the constitutionality of La. C.Cr.P. art. 782(A) prior to trial. Defendant did not object to the jury charge instructing the jurors regarding the requirement that ten of the twelve jurors must concur to render a verdict. Finally, defendant did not object to the verdict at the time it was rendered. Rather, defendant challenged the constitutionality of La. C.Cr.P. art. 782(A) for the first time in the motion he filed two weeks after the jury found him guilty as charged.
La. C.Cr.P. art. 841 provides that an error. cannot be availed of 'after verdict unless it was objected to at the time of the occurrence. In order to seek appellate review of an alleged trial court error, a party must make a contemporaneous objection at trial, and he must state the grounds for the objection. La. C.Cr.P. art. 841; State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, 613-14, writ denied, 12-2478 (La. 4/19/13), 111 So.3d 1030; Gaal, 800 So.2d at 949. Furthermore, a post-conviction motion is not the proper procedural vehicle to attack the constitutionality of La. C.Cr.P. art. 782(A). See State v. Ellis, 13-1401 (La.App. 4 Cir. 2/4/15), 161 So.3d 64, 82, writ denied, 15-489 (La. 1/15/16), 184 So.3d 704 (“The Louisiana Code of Criminal Procedure makes no provision for the filing of a post-conviction motion to declare jury unanimity laws unconstitutional,”)
In addition, the record indicates that defendant failed to serve or otherwise notify the attorney general regarding the motion challenging the constitutionality of La. C.Cr.P. art. 782(A). In State v. Veal, 11-44 (La.App. 5 Cir. 12/28/11), 83 11So.3d 211, 213-14, writ denied, 12-2373 (La. 4/5/13), 110 So.3d 1072, this Court declined to address the merits of a similar assignment of error because defendant did not serve the attorney general with his motion challenging the constitutionality of the statute. Due to the failure to raise this issue prior to the verdict and the failure to properly serve the attorney general, defendant is not entitled to review by this Court.[4]
*1221 ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). The review reveals an error patent in this case.
Neither the transcript nor the commitment indicates that the trial court advised defendant of the time period for seeking post-conviction relief as provided in La. C.Cr.P. art. 930.8. It is well settled that if a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See Brooks, 103 So.3d at 615. Accordingly, we now advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
AFFIRMED

. In accordance with La. R.S. 46:1844(W)(3), the victim, who is a minor, and the victim’s family members will be referred to by their initials to protect the victim’s identity. See State v. Hernandez, 14-863 (La.App. 5 Cir. 9/23/15), 177 So.3d 342, 345, n.1.

. La. C.Cr.P. art. 797(4) provides that the State or the defendant may challenge a juror for cause on the ground that the juror will not accept the law as given to him by the court. Under Louisiana law, in the absence of internal contradiction or irreconcilable conflict with physical ¡evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Turner, 05-75 (La.App. 5 Cir. 5/31/05), 904 So.2d 816, 823, writ denied, 05-2591 (La. 5/26/06), 930 So.2d 20.

. La. C.C.P. art. 1880 provides that if a statute is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard.

. Even if this issue was properly before us on appellate review, the Louisiana Supreme Court and this Court have long held that non-unanimous jury verdicts for twelve-person juries are not unconstitutional in non-capital cases. State v. Edwards, 420 So.2d 663, 674 (La. 1982); State v. Bertrand, 08-2215 (La. 3/17/09), 6 So.3d 738, 743; Brooks, 103 So.3d at 613-14.