ROBERT A. CHAISSON, Judge.
|2In this appeal, defendant, Richard Ray, challenges his second degree murder conviction on the basis that the evidence was insufficient to support his conviction. For the reasons that follow, we affirm defendant’s conviction and sentence.

PROCEDURAL HISTORY

On June 23, 2011, the Jefferson Parish Grand Jury returned an indictment charging defendant with second degree murder, in violation of LSA-R.S. 14:30.1. At his arraignment on June 24, 2011, defendant pled not guilty. The matter proceeded to trial before a twelve-person jury on December 6-9, 2011. After considering the evidence presented, the jury found defendant guilty as charged. On January 5, 2012, the trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant now appeals.
| ¿FACTS
This case stems from a shooting that occurred at approximately 8:00 p.m. on February 24, 2011, on the west bank of Jefferson Parish. On that day, in the early evening hours, there was apparently a gathering of people in the 1500 block of Abbey Road in Harvey. These people, many of whom knew or at least recognized each other, were “hanging around,” talking, drinking, and having a good time.
Eddie Wilkinson and Terrance Neal, who were both drinking, engaged in a heated discussion. At some point, Neal’s female cousin, Tion Franklin, came over to the men and joined in their conversation. Wilkinson seemingly said something that Franklin did not like, and the two of them exchanged words. Shortly thereafter, defendant, Franklin’s boyfriend, approached, and a verbal argument ensued between defendant and Wilkinson. Defendant told Wilkinson he would be back, and then left with Franklin in his white four-door car with big rims. Within thirty minutes, defendant returned with a gun in his hand. He approached the group of people, pointed the gun at Wilkinson, fired one shot, and fled the scene.
Deputy Donna Madere responded to the 911 call about a shooting. When she arrived at the scene, she observed an unre *19 sponsive black male lying in the driveway of the apartment. As medical personnel were attending to Wilkinson, Deputy Mad-ere observed that the man had a gunshot wound to his lower left abdomen. Wilkinson was transported to the hospital where he died.[1]
Detective Rhonda Goff of the Jefferson Parish Sheriffs Office, the lead detective on this case, arrived at the scene and began her investigation. From her conversations with witnesses, Detective Goff learned that the possible perpetrator’s name was “Rich,” that the car being driven by the perpetrator was an older model, |4white, American car with rims, and that Tion Franklin was there that night with “Rich.” Through her investigation, Detective Goff discovered that “Rich” was Richard Ray and that he owned a 1997 white Lincoln, four-door car with rims and a license plate number TTC007. Once the license plate for defendant’s vehicle was obtained, Detective David Spera researched the camera system surrounding that neighborhood and discovered that the camera captured defendant’s car going into the neighborhood on the day of the murder.
Based on this information, Detective Goff compiled a six person photographic lineup containing defendant’s photograph. In addition, she composed a photographic lineup containing Tion Franklin’s picture. Based on witness statements and positive identifications of defendant and Franklin, Detective Goff obtained an arrest warrant for defendant and a search warrant for his last known address, which was his mother’s residence. However, defendant’s mother advised the detective that he had not lived there for months. The detective subsequently received information that defendant was in Tallulah, Louisiana. By the time the police got there, defendant was gone; however, the detective located and searched the suspect vehicle, recovering only a cell phone with no battery or SIM card. Defendant later turned himself in to police. The gun used in this homicide was never located.

SUFFICIENCY OF THE EVIDENCE

In his sole assigned error on appeal, defendant challenges the sufficiency of the evidence used to convict him of second degree murder.
The constitutional standard for testing the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of a criminal conviction record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
Second degree murder is defined in LSA-R.S. 14:30.1, in pertinent part, as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed *20 criminal consequences to follow his act or failure to act. Specific criminal intent, as a state of mind, need not be proven as fact but may be inferred from the circumstances and the actions of the accused. State v. Martinez, 09-740 (La.App. 5 Cir. 3/23/10), 38 So.3d 926, 932. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing it at a person. State v. Jackson, 03-883 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 850, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118.
Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. See State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Ingram, 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Positive identification by one witness is sufficient to support a conviction. State v. Harris, 07-124 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 193.
| (¡Defendant does not appear to argue that the State failed to establish any of the essential statutory elements of his conviction, but rather contends the State failed to prove beyond a reasonable doubt his identity as the shooter. To support this argument, defendant points to numerous inconsistencies in the testimony regarding the description of the perpetrator and the description of his car. In addition, he points to variances in the testimony regarding whether one or two shots were fired and whether defendant carried the gun in his right or left hand. Defendant further asserts that the testimony of defendant’s mother, Willie Ray, provided a reasonable hypothesis that defendant was not the perpetrator. Defendant points to her testimony that defendant was in Tallu-lah for a family member’s funeral.
Despite any inconsistencies in the testimony, we find that the State presented sufficient evidence at trial to prove beyond a reasonable doubt that defendant was guilty of second degree murder. In particular, to meet its burden of proof, the State introduced the testimony of numerous witnesses who were present at the scene and saw defendant’s actions. Justin Williams testified that he saw defendant arguing with Wilkinson and then heard defendant say, “I’ll be back.” Williams testified that defendant left in a white Cadillac with rims. Further, Williams saw defendant’s car return and observed defendant get out and walk towards Wilkinson with a gun in his hand. Williams heard a gunshot and saw defendant with his arm raised. He then saw defendant get back into the same white car and leave. At the time of the incident, Williams, who did not know defendant, described him as a tall, slim black male with a “low” haircut and a “bump” or mole on his face. When subsequently presented with a photographic lineup, Williams positively identified defendant as the person who shot Wilkinson.
17Ericka Oliver testified that she witnessed the argument between Wilkinson and Franklin and the argument between defendant and Wilkinson. She heard defendant tell Wilkinson, “I’ll be right back.” Oliver saw defendant return within thirty minutes with a gun, point the gun at Wilkinson, and shoot him. Oliver, who did not know defendant prior to the incident, described him as five feet, six inches tall with dark skin, a mustache, and a “low” haircut. Oliver also positively identified defendant in a photographic lineup as the person who argued with and then shot Wilkinson.
Phillip Davis testified that he also witnessed the argument between defendant *21 and Wilkinson. Davis did not see defendant come back and did not see the shooting or the shooter. However, he did positively identify defendant as the man he saw arguing with Wilkinson that evening.
Karen Pierce also witnessed the arguments between Wilkinson and Franklin and Wilkinson and defendant. She heard defendant say to Wilkinson, “I’ll be right back.” Pierce saw defendant leave in a white Cadillac with rims, but she did not see who shot Wilkinson. When shown a photographic lineup, Pierce positively identified defendant as the man arguing with Wilkinson who said, “I’ll be right back.”
Derron Howard was also present in the neighborhood on the night of the incident. According to Howard, defendant was driving a white or cream colored Lincoln with rims. He saw defendant get out of his car with a black gun in his hand. Howard saw defendant point the gun at Wilkinson, heard a gunshot, and then saw defendant return to his car and leave. Howard positively identified defendant in a photographic lineup as the person he saw shoot Wilkinson.
Lawanda Davis testified that on the night of the shooting, she heard Franklin and Wilkinson and defendant and Wilkinson arguing. She heard defendant say, |S“H1 be right back.” She later saw defendant walk up with a gun in his hand, point the gun, and shoot Wilkinson. Davis did not see defendant leave in his car, but she testified that defendant does drive a white Lincoln with rims. Davis positively identified defendant in a photographic lineup as the person who shot Wilkinson.
In addition to these "witnesses placing defendant at the scene, Detective David Spera testified that Jefferson Parish Sheriffs Office’s Boss 3 Camera System captured pictures of the license plate on defendant’s white Lincoln in the surrounding area. The pictures placed him near the Pebble Walk neighborhood earlier on the day of the murder. Near the time of the murder, defendant’s license plate was captured by this system at the intersection of Marvin Court and Price Drive, at 7:49 p.m. and 8:11 p.m. The State presented a map showing the distance of this intersection from the scene of the murder. Detective Goff testified that it took her about five to six minutes to drive from the scene of the murder to the intersection of Marvin Court and Price Drive. The dispatch call for the shooting came in at about 8:06 p.m.
At trial, defendant presented the testimony of one witness, his mother Willie Ray. Defendant claims that her testimony provided him with an alibi. However, her testimony showed that she did not actually know defendant’s whereabouts on the day of the murder, which was Thursday, February 24, 2011. She testified that when Detective Goff came to her house looking for defendant, he was in Tallulah, Louisiana, at a funeral. However, Ray admitted in her testimony that the day she discovered defendant was in Tallulah at a funeral was a Saturday, the same day Detective Goff went to her house searching for defendant, and that she did not know defendant’s whereabouts prior to that day. Additionally, Ray testified that she found a pawn ticket in defendant’s car, containing his signature, for a |9.38 pistol. This pawn ticket is for a pawn shop located in Gretna, Louisiana, and is dated February 24, 2011.
In the present case, the jury heard the testimony of numerous witnesses who were in the area at the time of the shooting, as well as the testimony of defendant’s mother. Admittedly, there were inconsistencies in the testimony. The jury obviously believed the testimony of the State’s witnesses despite the minor inconsistencies and contradictions in their testimonies. The credibility of witnesses *22 presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to second guess the credibility of witnesses absent impingement on the fundamental due process of law. State v. Jones, 985 So.2d at 240.
In this case, the jury was presented with testimony that defendant and Wilkinson were arguing, that defendant told Wilkinson he would be right back, and then left the scene in a white or cream colored car with big rims. Shortly thereafter, defendant returned, armed with a gun, and shot Wilkinson. The jury was also presented with evidence that defendant’s car was captured in the area at the time of the shooting by a camera surveillance system. Further, the pawn ticket found in defendant’s car from a Gretna pawn shop showed he was in the general vicinity on the day of the murder. Viewing the evidence in a light most favorable to the State, we find that a rational trier of fact could have concluded that defendant committed the second degree murder of Wilkinson. Accordingly, we find no merit to the arguments presented by defendant herein.

UERROR PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action.
Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence.

CONVICTION AND SENTENCE AFFIRMED

. Dr. Dana Troxclair, a forensic pathologist with the Jefferson Parish Sheriff’s Office, performed an autopsy on the victim. She determined that the cause of death was a single gunshot wound to the lower left abdomen.