CHAISSON, J. |T Defendant, Brandon Gray, appeals his convictions and sentences for five counts of armed robbery and one count of aggravated flight from an officer. Defendant’s appellate counsel has filed a brief setting forth three assignments of error relating to the sufficiency of the evidence and the trial court’s denial of defendant’s motions for mistrial. In addition, defendant has filed a pro se brief in which he assigns thirteen errors that allegedly occurred during the course of the. proceedings. Finding no pierit to the arguments advanced by either defendant or his appellate counsel, we affirm defendant’s convictions and sentences. PROCEDURAL HISTORY On December 3, 2014, the, Jefferson Parish District Attorney filed a bill of information Charging defendant with five counts .of armed robbery, violations of La. R.S. 14:64 (counts one, two, three, four, and five) and one count' of aggravated flight from an officer, in violation of La: R.S. 14:108.1(C) (count six). At his arraignment, defendant pled not guilty. Following resolution of some pretrial motions, defendant proceeded to trial before a twelve-person jury and was found guilty as charged on September 22,' 2016. Defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal, which were denied. On October 19, 2016, the trial court sentenced defendant to fifty years imprisonment at hard labor without benefit of .probation,- parole, or suspension of sentence on counts one through five and to five years imprisonment at hard labor on count six, to run concurrently. Thereafter, pursuant to the provisions of La. R.S. 15:529.1, the State filed a multiple offender bill of information on count one alleging defendant to be a second.felony offender.,On December 12, ¿016, after defendant stipulated to the multiple bill, the trial court vacated defendant’s sentence on count one and resentenced him as a second felony offender to fifty years in the Department of Corrections without benefit of probation, parole, or ^suspension of sentence. The trial court ordered that his enhanced sentence run concurrently with his other sentences. Defendant now appeals. FACTS The charges in this case arise from’ robberies on two different dates at' Iberia Bank located on Barataría Boulevard in Marrero. The first incident, which encompasses counts one and two in the bill of information, occurred on September -30, 2013.[1] On that date, Daniel Gannard, the branch manager, observed an individual with a pistol and a cloth over his face approach the bank, at which point he yelled out to alert the employees. Both Lynne Hebert, an assistant branch manager, and Mr. Gannard described that the robber rushed through the door waving a gun and shouting obscenities. After knocking his gun on Mr. Gannard’s window and telling him, “Get the f**k. up. I’m not playing with you,” the perpetrator proceeded to the teller window and demanded money. In particular, the assailant pointed a gun at Jarod Murphy’s head and commanded the teller to give him all the money. Mr. Murphy complied and started putting money into the white plastic grocery bag provided by the robber. During this encounter, the assailant noticed Trudy White, a teller who was in the drive-up window, and ordered her to also give him all the money. She likewise complied with his demand and assisted Mr. Murphy in putting the money in the white grocery bag. After they put the money in the bag, the robber turned to leave, yélling for everyone to get down and threatening to shoot. While the robbery was in progress, Renee Rodney, a bank employee who was in the break room, saw what was transpiring, exited the back door, and ran to the restaurant next door for help. After someone from the restaurant'called 9—1—1, Ms. Rodney went back outside and saw the, robber exit the rear of the bank, “skipping” to his car, an older model gold Suburban, located behind the bank in a neighboring driveway. | .¡Deputy Stan Kerr of the Jefferson Parish Sheriffs Office respondedlo the armed robbery call, and upon his arrival, he secured the scene and obtained initial statements from the victims and witnesses. When Detective Marc Macaluso, the investigating officer, thereafter arrived at the bank, he also spoke to the victims and witnesses. From these interviews, Detective Macaluso learned that the perpetrator was “a black male, approximately 5’5" to 5’10" in height. He was wearing a camouflage boonie hat, a red sweatshirt, sunglasses and a white cloth over his face.” Additionally, Detective Macaluso learned that the assailant wore “a yellow, reflective, construction-style vest” and had a tattoo on his right hand. With this limited information, no suspects were developed, and the investigation was suspended. It was also determined that the perpetrator stole $4,720.00, none of which was recovered. The second armed robbery, which encompasses counts three, four, and five in the bill of information, occurred on October 9, 2014.[2] At approximately 10:00 a.m., while Mr. Gannard was meeting with Ms. Hebert in his office, he saw an individual pass the window who resembled the perpetrator from the September 2013 armed robbery, prompting him to say, “He’s back again, y’all. Heads up.” The robber, whose face was fully covered, rushed into the bank armed with a black handgun.[3] After threatening Mr. Gannard, the assailant ran across the lobby, leapt over the teller counter, and yelled, “I want the money. I want all the money. Don’t play with me. I will kill you.” The perpetrator approached Rachel Aie-na, grabbed money from her, put it in a white grocery bag, and then advanced towards Ms. White, the drive-up teller. Ms. White described that the assailant pointed the gun at her, demanded all the money, and threatened to kill her. Fearful for her life, Ms. White complied with 14the robber’s demands and put the money in the “Wal-mart bag.” The robber then went to Dana Silvey, another teller, and demanded money from her. She handed him the money from her cash drawer, and after putting it in the plastic bag, the robber demanded that she open the vault. Ms. Silvey explained that she could not open the vault by herself, but he held the gun at her side saying, “I will f**king shoot you. Open the faking vault.” Being unable to enter the vault, the robber collected his money, jumped back over the counter, and exited the bank. ' At the time of this robbery, Ms. Silvey happened to be on the phone with her husband, Oliver Silvey, a lieutenant with the Jefferson Parish Sheriffs Office. Ms. Silvey told her husband that the bank was getting robbed, and then she put the phone down but did not hang up. Lieutenant Silvey called in the robbery over his police radio. After the perpetrator left the bank, Ms. Silvey got back on the phone with her husband and advised him that the robber left in a blue Suburban and was headed westbound on Oak Street. Police officers, including Deputies Ted Raymond and Alvin Farris, responded to the armed robbery call, and upon arriving in the area, observed a blue Suburban matching the description of the suspect vehicle on Lapalco Boulevard. A high speed chase ensued, which ended when the vehicle crashed into a house in the Lin-colnshire Subdivision. The suspect then jumped out of the vehicle holding the bag with the money in one hand and a gun in the other. As he fled, the plastic bag got caught on the end of the bumper causing the bag to rip and the money to be scattered over the front lawn. Deputy Raymond shouted at the suspect to stop, but he ignored the officer’s order and jumped over a fence. When Deputy Raymond again shouted to stop, the suspect turned and pointed the gun at him, at which point Deputy Raymond fired his weapon at the armed assailant. Despite being shot, the suspect fled, but after a short foot chase, was apprehended. The suspect, who was | ¿identified as Brandon Gray, was thereafter handcuffed, advised of his rights, and transported to the hospital for treatment of his gunshot wounds. Major Chad Pitfield of the Jefferson Parish Sheriffs Office, who was also at the scene of the stop, secured the money that was in the front yard and thereafter returned the stolen money, $15,667.00, to Iberia Bank. In addition to recovering the money, the officers also discovered a pellet gun in the area of defendant’s apprehension. Further, as a result of a search of the blue Suburban, the officers recovered a pair of gloves, a green bandanna, and a dark blue sweatshirt. After learning that defendant had been transported to the hospital, Detective Ma-caluso went there with the intent to interview him. Detective Macaluso reviewed the rights form with defendant but decided to discontinue the interview because of defendant’s condition.[4] However, later that day, defendant was transported to the detective bureau, at which time Detective Macaluso advised him of his rights and conducted an interview with him. During the recorded interview, defendant confessed to the October 9, 2014 aimed robbery, but he denied any involvement in the September 30, 2013 robbery. When shown photographs of the suspect and suspect vehicle from surveillance video from the 2013 robbery, defendant still denied his involvement and further denied having previously seen the vehicle. Detective Macaluso then confronted defendant with evidence that he was issued a traffic citation on November 5, 2011, driving a 1996 GMC gold Suburban, which belonged to his children’s mother. The day after the interview, Detective Macaluso located this vehicle in the Lincolnshire neighborhood near the area where defendant was apprehended. As a result of a search of this vehicle, the police recovered a box of pellets and “construction-type equipment.” Defendant was thereafter charged with both the September 30, 2013 and October 9, 2014 robberies. I «COUNSELED ASSIGNMENTS OF ERROR Sufficiency of the Evidence (Assignment of Error Number One) In his first assignment of error, defendant challenges the sufficiency of the evidence used to convict him of the armed robberies of Ms. White (count one) and Mr. Murphy (count two) that occurred on September 30, 2013. While defendant maintains that the evidence was insufficient to prove all the elements of these two armed robberies, his argument focuses on the State’s failure to prove his identity as the perpetrator. In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 660 (1979); State v. Mickel, 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La. 1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. State v. Jones, 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240. It is not the function of the appellate court to assess credibility or re-weigh the evidence. State. v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, 443. To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that defendant took “anything pf value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon,” La. R.S. 14:64. |7Encompassed in proving the elements of an offense is the necessity of proving the identity ,of the defendant as. the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of miside'ntification in order to carry its burden of proof. State v. Ray, 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied, 13-1115. (La. 10/25/13), 124 So.3d 1096. In the present case, we find that the State presented sufficient evidence to prove beyond a reasonable doubt’'all the elements of the Pífense of armed robbery;5 including defendant’s identity as the perpetrator. At trial, the State presented testimony that on September 30, 2013, a black male armed with a handgun came into the bank, demanded money, and took money from two different bank tellers, Ms. White and Mr. Murphy. Admittedly, the suspect had his face fully covered during the robbery, and therefore, none of the victims or witnesses were able to identify defendant as the robber. However, several witnesses who were present at both robberies testified about the similarities between the perpetrators and the crimes. Ms. Hebert stated that she felt confident that the same person robbed the bank both times, specifically noting the similarities between the sound of the-voice and the language used. In addition, Ms. Hebert noted that on both occasions, the assailant wore a “bandanna-type covering” over his face, carried a black. automatic handgun, and used a white plastic,grocery bag. Ms. White testified that the perpetrator of both robberies was an African-American male. She further observed that the assailants had the same exact ’voice and had similar “[m]annerisms, character, shouting, everything.” Mr. Gannard likewise felt confident that the assailants were the same as evidenced by his announcement,. “He’s -back again, y’all,” when he saw the perpetrator of the October 2014 robbery approach the bank. During his testimony, Mr. Gannard explained, “The body language, the way he walked, the height, the way he got to the door and turned back and looked at me, it was all the s.ame that happened a kyear prior to that." Further, the jury was able to riew the surveillance video from both robberies and was able to determine whether to accept the witnesses’ testimony concerning the similarities between the two robberies.[5] Additionally, defendant was connected to an older model gold Suburban, a car consistent with the getaway vehicle in the September' 2013 robbery. When that vehicle was searched, construction gear, consistent with the reflective vest used in the September 2013 robbery, was found. Further, defendant had tattoos on his right hand consistent with the tattoos on the right hand of the perpetrator in the September 2013 robbery. Applying the Jackson standard, we find that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have concluded beyond a reasonable doubt that defendant committed the armed robberies of Ms. White and Mr. Murphy on September 30, 2013. Accordingly, the arguments relating to the sufficiency of the evidence are without merit. State’s Improper Reference to Defendant’s Right Against Self-Incrimination (Assignment of Error Number Two) In his next assigned error, defendant argues that the trial court erred in denying his motion for mistrial after the State’s improper reference to defendant’s right against self-incrimination. Defendant specifically complains about the following statements of the prosecutor when he addressed a panel of prospective jurors during voir dire: MR. CONSTANT: ... The second constitutional right, ladies and gentlemen, is that you have a right to remain silent. What does that mean? You hear it on television all the time. What that means is Mr. Perez [defense counsel] and Mr. Gray, they have done their job already. They showed up here |3today. They don’t have to do anything. Mr. Perez doesn’t have to even conduct voir dire if he doesn’t—if he chooses not to. They don’t have to call any witnesses. They can sit there—he doesn’t have to question any of my witnesses. All they have to do is sit there and watch me present my case. Okay. And if they choose not to do anything, more importantly, if he chooses not to even take the stand after I finish my case, that decision cannot be held against him. Does everybody promise to do that? And I know—y’all are kind' of shaking yes, but I just want to hit on this one more time. It’s human nature—Miss Earls, would you agree, it’s human nature that you would want to know, right? You would want to know why he doesn’t say anything? PROSPECTIVE JUROR NO. SEVEN: Yes. MR. CONSTANT: If you are innocent, you—and I am talking about you specifically, Miss Earls. If you are innocent of the crime, you would probably be telling everybody, right, that you are innocent and why you are innocent. Would you agree? PROSPECTIVE JUROR NO. SEVEN: Yes. Following these comments, defense counsel requested to 'approach the bench and moved for a mistrial pursuant to La. C.Cr.P. art. 770(3), which prohibits the district attorney from making any reference to á defendant’s' failure to testify. After considering the arguments of counsel, the trial court denied defendant’s motion for mistrial. Defendant now challenges this denial. • ■ On appeal, defendant contends that the prosecutor’s comment, that it is human nature to want to know why a defendant does not say anything, was meant to cast negative aspersions on defendant if he did not testify and also implied that it was the duty of defendant to take the stand for the jury to Imhear his side of the story. Appellate counsel acknowledges that the prosecution may refer to a defendant’s constitutional right not to testify in voir dire, but claims that “the philosophical comments” made in this case go well beyond the jurisprudential rule and eroded defendant’s constitutional right not to testify. A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to a defendant, depriving him of a reasonable expectation of a fair trial. Whether, a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. State v. Lagarde, 07-123 (La. App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14, writ denied, 07-1650 (La. 5/9/08), 980 So.2d 684. La. C.Cr.P. art. 770(3) provides that a mistrial shall be ordered when the prosecutor makes a remark or comment during the trial or in argument, within the hearing of the jury, that refers directly or indirectly to the failure of the defendant to testify in his own defense. The purpose behind this prohibition against such prose-cutorial misconduct is to protect the defendant’s Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Mitchell, 00-1399 (La. 2/21/01), 779 So.2d 698, 701. When the prosecutor directly refers to the defendant’s failure to take the stand, the defendant must be granted a mistrial if he requests one. An indirect reference to the defendant’s failure to take thé stand warrants a mistrial only when it is clear that the remark was intended to focus the jury’s attention on the defendant’s not testifying. State v. Packnett, 04-709 (La. App. 5 Cir. 12/28/04), 892 So.2d 615, 622, writ denied, 05-599 (La. 6/3/05), 903 So.2d 455. InDuring voir dire, the State may mention the defendant’s constitutional privilege against self-incrimination to the jurors and then inquire into the weight jurors will give to the defendant’s testimony if he decides to testify. State v. Shea, 421 So.2d 200 (La. 1982), rev’d on other grounds, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985); State v. Thomas, 553 So.2d 980 (La. App. 4th Cir. 1989), writ denied, 558 So.2d 568 (La. 1990). In State v. Packnett, supra, this Court was presented with a situation similar to the one herein and found that a mistrial was not warranted based on the prosecutor’s comments during voir dire that referenced the defendant’s privilege against self-incrimination to the jurors. In particular, the defendant therein complained about the following comments that occurred immediately after the explanation of the presumption of innocence and during the prosecutor’s discussion of the defendant’s right not to testify: MR. BRINDISI [prosecutor]: And in addition to that there is another right that the Defendant has. And that is the Defendant in every criminal case, every criminal charge—the Defendant always has the Fifth Amendment Right not to testify. He does not have to testify. I can Subpoena almost anyone, anyone in the State of Louisiana or outside the State of Louisiana through the use of a Subpoena. Wall got Subpoenas to be here; right. Everybody got a Subpoena. You showed up; right. If you get a Subpoena and you don’t show up, they’ll issue an Arrest Warrant. They’ll go out and get you. That shows you how powerful of a vehicle a Subpoena is. It can bring people into Court. So I can send a Subpoena to the Governor of Louisiana. I can send a Subpoena to most every Governor, to the Mayor of New Orleans, to most people living outside the State of Louisiana if I can show the Judge that their testimony will be helpful to the Jury. Just can’t send Subpoenas out to everybody. There is one person in the whole State, in the whole Country, in the whole World that I can’t send a Subpoena to; and you know who that is. Y’all know who that is? JUROR: The Judge. |12MR. BRINDISI: Who? JUROR: The Judge. MR. BRINDISI: No. The Defendant. I can’t make the Defendant testify. He has the right- not to testify, and I have nothing tó say about it. I have nothing to say about it. That’s up to his Attorney and that’s up to him. Ultimately it’s his decision whether or not he’s going.to testify. And the reason why I’m telling you is this. That is his decision to testify or not. But the point is this—I just want to mention this. You can’t hold that, against him. You can’t hold it against him. You cannot hold it against him. And I know that’s a very serious order to ask or request to ask of you. Because I know as human beings we’re all such curious people. We’re all such curious people. I mean, the one person you think you might want to hear from, you’re not allowed to. So I think that plays at least some kind of uncomfortability- After these comments, the defendant objected and moved for a mistrial. The trial court denied the motion for.mistrial but directed the prosecutor not to comment on whether the jury might want to hear from the defendant. Thereafter, voir dire continued, and the prosecutor reiterated to the prospective jurors that they were not allowed to hold the defendant’s failure to testify against him. The prosecutor then questioned some of the prospective jurors if they were “okay with that,” and they responded affirmatively. On appeal, this Court noted that standing alone, the prosecutor’s remarks immediately preceding the defendant’s objection seem “to tread very close to an impermissible reference” to the defendant’s failure to testify. However, this Court ultimately determined that a mistrial was not warranted based on the following reasoning: Taken in context, however, it appears that the prosecutor’s comments were permissible under Shea because the comments were made in the context of the prosecutor’s explanation of the burden of proof and the defendant’s privilege against self-incrimination. The prosecutor’s point was to emphasize that the defendant had the -right not to testify and that the jurors could not hold it against the defendant |1sif he chose to exercise that right. The remarks were a comment on the defendant’s failure to take the stand, but were a permissible discussion of the privilege against self-incrimination followed by an inquiry into the prospective jurors’ ability to accept the law. Id. at 623-24. Likewise, in this case, the prosecutor’s remarks bordered .on an impermissible reference to defendant’s failure to testify. However, taken in context, we find that the prosecutor’s remarks do not warrant a mistrial. While the remarks did reference defendant’s failure to take the stand, they were made in the context of the prosecutor’s explanation of the burden of proof and defendant’s privilege against self-incrimination and were followed by an inquiry into the jurors’ ability to accept the law. Accordingly, the arguments raised in this assigned error are without merit. State’s Reference to Other Crimes Evidence (Assignment of Error Number Three) In his third counseled assignment of error, defendant contends that the trial court erred in denying his motion for mistrial based on the State’s reference to “other crimes.” In particular, defendant contends that a mistrial was warranted because the jury heard a reference to him having been in prison during the playing of his recorded statement at trial. In the present case, prior to playing defendant’s video-taped statement for the jury, the State noted that it was “not going to publish any material that is deemed irrelevant for the purposes of wasting the jury’s time,” ineluding any references to defendant’s prior incarceration and/or convictions. Despite this agreement, the State apparently neglected to remove a reference to defendant having been in prison, which remark the jury heard during the playing of defendant’s video-taped statement. At that point, defendant moved for a mistrial,[6] [ 14The prosecutor responded that he thought he had removed all the references to prior incarceration and/or convictions, but in any event, defendant was not prejudiced by the comment, and the error could be remedied by a curative instruction and an admonition to both the State and the jury. In response,- defense counsel noted that the State “knew what they were going to offer and they knew'what was inadmissible” and pointed to the trial court’s previous ruling that denied the State’s motion to introduce other crimes evidence. After considering the arguments of counsel, the trial court found that a mandatory mistrial was not warranted under La. C.Cr.P. art. 770 because the statement was not made by the judge, district attorney, or court official. The trial court further determined that a discretionary mistrial was not warranted under La. C.Cr.P. art. 771 because the remark did not “rise to the level to be so prejudicial as to deprive him of a fair trial.” Defendant now challenges the trial court’s denial of his motion for mistrial. He contends that a mistrial was mandated because, the remark can be imputable to the State because it failed to retract the reference to defendant having been in prison. Generally, evidence of other crimes committed by a defendant is inadmissible at trial due to the risk of grave prejudice to the defendant. State v. Williams, 01-1007 (La. App. 5 Cir. 2/26/02), 811 So.2d 1026, 1030. La. C.Cr.P. art. 770(2) mandates a mistrial, upon motion of a defendant, “when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... another crime committed' or alleged to have been committed by the defendant as to which evidence is not admissible.” A police officer is not considered a “court official” within the meaning of La. C.Cr.P. art. 770. State v. Tuckson, 00-1408 (La. App. 5 Cir. 2/28/01), 781 So.2d 807, 814, writ denied, 01-1129 (La. 1/25/02), 806 So.2d 671. However, the | ^jurisprudence provides that “an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the state, and would therefore trigger' the provisions of article 770.” State v. Jones, 00-162 (La. App. 5 Cir. 7/25/00), 767 So.2d 862, 866, writ denied, 00-2484 (La. 6/22/01), 794 So.2d 783. In the present case, we agree with the trial court that a mandatory mistrial was not warranted pursuant to the provisions of La. C.Cr.P. art. 770. First, the comment about defendant having been in prison was not made by the judge, district attorney, or court official. Second, there is no. indication that the State intentionally left this remark in the statement for the jury to hear. The State apparently redacted numerous references to defendant’s incarceration and/or prior convictions from the statement but inadvertently failed to remove this one particular comment by Detective Macaluso about defendant having been in prison. See State v. Williams, 04-1309 (La. App. 5 Cir. 4/26/05), 902 So.2d 485, 494, writs denied, 05-1640 (La. 2/3/06), 922 So.2d 1173 and 924 So.2d 144 (where this Court held thát the prosecutor’s comment, during cross-examination of a witness, that the defendant had been in jail for two years, did not fall within'the mandatory mistrial provisions of La. C.Cr.P. art. 770). Rather, Detective Macaluso’s comment falls under La. C.Cr.P. art. 771, which sets forth the proper remedy for prejudicial remarks made by someone other than the judge, district attorney, or court official. Article 771 provides, in pertinent part, as follows: In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury: [[Image here]] 11fi(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770. In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. A mistrial should be granted'under Article 771 only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Ventris, 10-889 (La. App. 5 Cir. 11/15/11), 79 So.3d 1108, 1123. In State v. Ducote, 614 So.2d 735 (La. App. 5th Cir. 1993), and State v. Davis, 05-733 (La. App. 5 Cir. 2/27/06), 924 So.2d 1096, this Court found that remarks, similar to the. one complained about herein, did not warrant the granting of a mistrial. In State v. Ducote, supra, this Court determined that the reference by a State witness to the defendant having been .in jail was not so prejudicial as to deprive him of a fair trial. In finding" that the denial of the mistrial was proper, this Court noted that the remark was an obscure reference to the defendant being in jail, was made without elaboration or explanation, and was unsolicited and unresponsive to the prosecutor’s question. Likewise, in State v. Davis, supra, this Court held that a remark by a State witness that he had talked to defendant while defendant was in jail did not warrant the granting of a mistrial. After ííóting that the comment was made by a witness and thus did not trigger the mandatory mistrial provisions contained in La. C.Cr.P. art. 770, this Court remarked: Moreover, it cannot be said that this testimony even constituted a reference to another crime committed or alleged to have been committed by defendant. The witness merely testified that he talked to defendant about “when he was in jail,” and he did not make a specific reference to another crime. Davis, supra at 1106. See also State v. Brooks, 40,186 (La. App. 2. Cir. 10/26/05), 914 So.2d 110, 114-15 (where the Second Circuit found, that a mistrial was not warranted based .on the detective’s response during direct.. examination that the | i,defendant was “already incarcerated” when he attempted to execute the arrest warrant). Similarly, we find that a mistrial was not warranted based on the remark made by Detective Macaluso in defendant’s recorded statement that was played for the jury. The statement made by Detective Macalu-so that defendant was “probably never right when [he] got out of prison” was made without further elaboration. The remark did not make a specific reference to another crime but merely mentioned that defendant was in jail. Further, we note that defense counsel refused the trial court’s offer to admonish the jury based on his belief that an admonition would just draw more attention to the comment about defendant having been in prison. Based on the foregoing, we find no abuse of discretion in the trial court’s denial of defendant’s motion for mistrial. PRO SE ASSIGNMENTS OF ERROR Defendant has filed pro se briefs setting forth thirteen assignments of error. Some of defendant’s pro se assignments encompass arguments raised by appellate counsel and already discussed herein. Particularly, in his first and third assignments of error, defendant complains about the trial court’s denial of his motion for mistrial based on the remark about his prior criminal record contained in his recorded statement that was played for the jury. In addition, in his fifth assigned error in his supplemental pro se brief, defendant challenges the sufficiency of the evidence used to convict him of the armed robbery of Trudy White set forth in count one of the bill of information. We have considered all additional arguments advanced by defendant relating to these issues; however, his arguments do not alter our determinations that the evidence was sufficient to support defendant’s conviction on count one and that the trial court did not err in denying defendant’s motion for mistrial, which was based on a remark about 11sdefendant having been in prison. The remaining assignments presented in defendant’s pro se briefs will now be addressed. Admissibility of Defendant's Statement (Pro Se Assignment of Error Number Two) In this assignment, defendant challenges the introduction of his video-taped statement, specifically asserting, “The trial court erred and abused its discretion by allowing the State to present partially-recorded and redacted interrogation as its key evidence to the jury to obtain a conviction.” At the pretrial hearing on defendant’s motion to suppress statement, Detective Macaluso testified regarding the circumstances surrounding his interview with defendant. According to Detective Macaluso, he met with defendant at the hospital while defendant was being treated for his gunshot wounds, and defendant indicated his willingness to speak with the officer and sign the rights form. However, Detective Macaluso decided not to proceed with the interview because defendant was unable to sign the rights form due to the pain he was experiencing. Later that evening, subsequent to his release from the hospital, defendant was transported to the detective bureau for an interview. Detective Macaluso explained that he reviewed the rights form with defendant and that defendant placed his initials after each right and signed the bottom of the form, indicating that he understood his rights and wished to waive them. Further, Detective Macalu-so testified that defendant was very alert, lucid, and articulate, that he appeared to be “stabilized,” and that he “absolutely” understood and knowingly and intelligently waived his rights prior to giving a statement. When asked about defendant’s medical condition on cross-examination, Detective Macaluso indicated that he did not make an effort to determine whether defendant was on any medication at the time of the interview. Detective Macaluso acknowledged that defendant was in pain; however, he maintained that defendant 1 in“was in the condition to be able to be interviewed” and that defendant could speak to him and communicate very well. Defendant also testified at the suppression hearing. According to defendant, when he woke up after having surgery in the hospital, Detective Macaluso was asking him questions while intentionally grabbing and hurting his leg in an attempt to get defendant to confess to “something [he] had no idea about.” Defendant indicated that he was not questioned further by Detective Macaluso at the hospital but was later brought to the detective bureau. He testified that he was in severe pain, was heavily medicated, was disoriented, and was in no condition to “give a voluntary and knowing admission- of anything.” During his testimony, defendant claimed that he did not remember being transported to the detective bureau, giving the interview, or signing the waiver of rights form. Subsequent to defendant’s testimony, the State recalled Detective Macaluso who denied grabbing defendant’s leg or doing anything else to force defendant to provide a confession. Detective Macaluso further reiterated that when he interviewed defendant at the detective bureau, defendant was not disoriented and appeared to understand everything that was going on. After taking the matter under advisement and reviewing the video-taped confession, the trial court denied defendant’s motion to suppress statement. In so ruling, the trial court noted that defendant, at no time, appeared incoherent; rather, he was “lucid, talkative,” and “expressive,” and was able to give detailed information in response to the detective’s questions. Further, the trial court noted that it did not see “evidence of any fragmented thought processes or incoherent answers,” nor any indication that defendant did not comprehend the questions or was somehow impaired by any medication that may have been administered to him at the hospital. 12nPefendant now asserts that the trial court erred in allowing his “partially-recorded and redacted interrogation” to be presented to the jury. He complains that the first half of the interrogation that was conducted at the hospital was not recorded, and therefore, he was unable to establish that Detective Macaluso coerced him to confess by squeezing his gunshot wounds. Further, defendant asserts that the second portion of his interrogation that occurred at the detective bureau was not played in its entirety as required by La. R.S. 15:450;[7] thus, he could not prove that he was incoherent or asleep during the interview. The State has the burden of proving the admissibility of a purported confession or statement by the defendant. La. C.Cr.P. art. 703(D); State v. Arias-Chavarria, 10-116 (La. App. 5 Cir. 9/28/10), 49 So.3d 426, 433, writ denied, 10-2432 (La. 2/25/11), 58 So.3d 460. Before an inculpato-ry statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant wasfirst advised of his Miranda[8] rights, that he voluntarily and intelligently waived them, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. State v. Loeb, 09-341 (La. App. 5 Cir. 2/23/10), 34 So.3d 917, 924-25, writ denied, 10-681 (La. 10/15/10), 45 So.3d 1110. A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. -The admissibility of a confession or statement is a determination for the trial judge, and the judge’s conclusions on the credibility and weight of the testimony relating to the. voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Testimony of the interyiew-ing 12iPolice officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given. State v. Arias-Chavarria, 49 So.3d at 433. In the present case, we find no merit to defendant’s arguments relating to the ad-, missibility of his statement. First, there was no interrogation conducted at the hospital. Detective Maealuso testified that while he orally reviewed defendant’s rights with him at the hospital, he did not proceed with the interview because of defendant’s condition. Therefore, ■ it is of no consequence that the interaction at the hospital between Detective Maealuso and defendant was not recorded. With regard to defendant’s statement at the detective bureau, the trial court was presented with conflicting testimony at the suppression hearing about the voluntariness of the statement. Detective' Maealuso testified that defendant was advised of his rights, understood- his rights, and freely and voluntarily waived them. Further, Detective Maealuso testified that defendant was alert and coherent and that no force or coercion was used to obtain his confession. In contrast, defendant testified that he was heavily medicated and disoriented, and further did not remember being transported to the detective bureau, giving the interview, or signing the waiver of rights form. The trial court’s decision to accept Detective Macaluso’s testimony about the circumstances surrounding defendant’s interview is clearly supported by the record. In particular, the video-taped confession shows that defendant was advised of his rights prior to making his statement, that defendant initialed next to each right on the rights of arrestee form indicating he understood his rights, and that he signed the form signifying that he read his rights and wished to waive them. Further, as noted by the trial court, defendant was lucid and gave coherent and detailed answers to the detective’s questions. Moreover, there is no indication that I ^defendant was sleeping during the interview[9] or affected by any type of medication. Accordingly, we find no merit to defendant’s arguments that his statement was not freely and voluntarily given due to Detective Macaluso’s coercion and the medications given at the hospital. Lastly, we find defendant’s argument, that the video-taped statement taken at the detective bureau should have been played for the jury in its entirety, was not properly preserved for appellate review. La. C.Cr.P. art. 841; State v. Carter, 10-973 (La. App. 5 Cir. 8/30/11), 75 So.3d 1, 6, writ denied, 11-2060 (La. 2/10/12), 80 So.3d 469. Defendant did not raise this argument at the -trial court level. Further, prior to the playing of the video at trial, the parties agreed that certain portions of the video-taped confession would not be played for. the jury. In particular, they agreed to redact “any material that is deemed irrelevant for the purposes of wasting the jury’s time,” including any references to prior incarceration and/or convictions. Accordingly, the arguments raised by defendant pertaining to the admissibility of his statement are without merit. Prosecutorial Misconduct (Pro Se Assignment of Error Number Four) Defendant also alleges that the trial court erred in not granting a mistrial based on the blatant prosecutorial misconduct that occurred throughout the duration of the trial. He specifically complains about the prosecutor’s intentional, improper actions in referencing his right not to testify during voir dire, in introducing “the illegally . partially recorded interrogation as his key evidence,” and in introducing his past criminal history through the introduction of his video-taped statement, even though the trial judge had already denied the State’s motion to introduce other crimes evidence. I mffe first note that there is no indication that defendant filed a motion for mistrial based on prosecutorial misconduct. Further, the merits of these alleged' errors have already been discussed herein. With regard to the prosecutor’s statements during voir dire, this Court found that a mistrial was-not warranted because the prosecutor’s remarks were an appropriate explanation of defendant’s privilege against self-incrimination, which was followed by an inquiry into the jurors’ ability to follow the law. We likewise found that a mistrial was not warranted- based on the State’s failure to redact a reference to • defendant having been in prison, which the jury heard during the playing of defendant’s video-taped statement. We noted that the detective’s remark was made without further elaboration and did not make a specific reference to another crime. Lastly, we found no merit to defendant’s arguments -about the admissibility of his video-taped statement. Finding no error in the actions complained of by defendant, we accordingly find no merit to defendant’s allegations of prosecutorial misconduct based on those errors. Denial of Motion to Continue (Pro Se Assignment of Error Number Six) On appeal, defendant also contends that the trial court erred in denying his motion to continue trial, which .basically forced him to proceed- to trial with unprepared and thus ineffective assistance of counsel. In this case, the record reflects that defendant was originally represented -by the Public Defenders’ Office (“PDO”) but then retained private counsel for a brief period of time. In April of 2015, the PDO was reappointed to represent defendant, at which time Mr. Joseph Perez was assigned to the case. Thereafter, Mr. Perez filed motions, handled hearings, and conducted discovery. In May of 2016,, defendant filed a .motion for substitution .of counsel, alleging inadequate representation by Mr. Perez, After the trial court denied this motion, defendant requested to represent himself. The trial court granted defendant’s request, ^appointed Mr.'Perez-as standby counsel, and-set the-,matter for-trial on August 15, 2016. . -On that date, defendant requested a continuance complaining that he was not given, sufficient access to the law library to adequately prepare for trial. The, trial court granted defendant’s motion and reset the trial for August 29, 2016, on which date- defendant again requested a continuance. The-trial court .denied his motion, handled some other preliminary matters, and set the trial for the' following day. When defendant appeared for trial on August 30, 2016, he advised the court that he no longer wanted to represent himself and requested that the PDO be reappointed. The trial court granted defendant’s request, reappointed Mr. Perez, and continued the trial to September 19, 2016. On September 6, 2016, prior to the scheduled trial date,-Mr. Perez filed a written motion for continuance on the basis that, defendant had filed a bar complaint against him which had not been adjudicated, and. it would be impossible to proceed in both matters simultaneously. At the hearing on this motion,to continue conducted on September 7, 2016, defense counsel further alleged that a continuance was warranted because defendant had just given him a witness list that he had not properly reviewed. The trial court denied the motion, and the matter proceeded to trial on September 20, 2016.[10] Defendant now challenges this denial asserting he was forced to proceed to trial with counsel who was unprepared. La. C.Cr.P. art. 712 provides, “A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.” Whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. Generally, a conviction will not be reversed even on a' showing of an improper denial of a motion for a continuance absent a showing of specific prejudice, State v. Simmons, 13-258 (La. App. 5 Cir. 2/26/14), 136 So.3d 358, 366, writ denied, 14-674 (La. 10/31/14), 152 So.3d 151. In the present case, we find no abuse of discretion in the trial court’s denial of defendant’s motion to continue trial. Defense counsel’s written motion for a continuance was based on the seeming conflict of defendant’s bar complaint against him, which defendant indicated he was going to withdraw. At the hearing, defense counsel did add that he needed more time to review defendant’s newly turned over witness list; however, he did not assert that he was unprepared otherwise. Indeed, the record indicates defense counsel was very familiar with the case as he had previously represented defendant, competently handled pretrial matters, and was standby counsel during the time frame that defendant represented himself. Accordingly, we find no abuse of discretion in the trial court’s denial of defendant’s motion to continue. With regard to defendant’s claim of ineffective assistance of counsel raised in his original brief,[11] we note that other than his broad • assertion that appointed counsel was “unprepared” for trial, defendant does not allege any specific errors, acts, or omissions that constituted deficient performance or that resulted in prejudice to defendant; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than on direct appeal, so as to afford the parties an evidentiary hearing in the trial court, if necessary, and to create an adequate record for review. State v. McIntyre, 97-876 (La. App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La. 9/18/98), 724 So.2d 753. Upon review, we find that it is appropriate |afifor defendant’s claim of ineffective ássistance of counsel to be addressed through an application for post-conviction relief rather than in this appeal. Obstructed View of Jury (Pro Se Assignment of Error Number Seven) In his next pro se assigned error, defendant complains' that he was prejudiced because he did not have a view of the first row of the jury, and therefore, he could not observe the jurors or lodge objections based on their conduct or inattentiveness. Specifically, defendant argues that “[a]s a result of the jurors lack of attention, after the trial, before deliberations, jurors had to ask to re-examine evidence and hear testimony.” (emphasis.added). The record indicates that at the beginning of voir dire, defense counsel lodged an objection based on the fact that the podium obstructed his and defendant’s view of the jury panel. His objection was specifically prompted by the decision to call twenty-one jurors, instead of fourteen, in the first group of prospective jurors. From the discussion on the" record, it appears that during voir dire, the jury box was reconfigured by the addition of another row of jurors. Defense counsel alleged that the podium impeded his and defendant’s visual of the “normal first row” and completely eliminated their vision of the “new first row.” In response, the trial judge noted that the issue with an' obstructed view occurs “[wjhen you are in a seated position,” and further noted that she would expect counsel to approach the podium when speaking to the jury. Defense counsel responded, “[tjhat’s correct, Your Honor. But this is not my trial. This is Mr. Gray’s trial.” After voicing his .objection, defense counsel requested that the trial court either remove the podium or the first row in order to afford defendant his “absolute right to observe the jurors during voir dire, to monitor their demeanors, their responses.” The trial judge overruled the objection, remarking that “regardless of whether or not the first row is there, to some degree the podium obstructs the view” when seated and because of the construct of the courtroom, |a7short of “undergoing some construction,” the trial court was unable to change it.- Defendant now complains on appeal that he was prejudiced by this obstructed view because he could not observe the jurors’ conduct or lodge objections based on their inattentiveness during trial. He claims that the jurors’ inattentiveness is supported by the State’s request for a recess because several jurors were sleeping and by the jurors’ request to re-examine evidence and hear testimony. Defendant objected to the obstructed view of the jury during voir dire, and his objection was prompted by the decision to call additional prospective jurors in the reconfigured jury box during questioning of the first jury panel. It is clear from the discussion between defense counsel and the trial judge that his objection concerned defense counsel’s ability to effectively participate during voir dire, and more specifically defendants inability, with an obstructed view of potential jurors, to assist counsel with jury selection. In defendant’s assignment of error, he makes no argument regarding the composition of the jury and raises no objection to any particular juror that was selected. Instead, defendant now attempts to expand his objection to possible juror inattentiveness during the trial. Defendant batees his allegation of potential juror inattentiveness on the fact that during the trial, when the trial court suggested that they take a break, the State indicated that it “did see a few of the jurors .kind of dozing, so a bathroom break might, be a good idea right now.” When this comment was made during a bench conference, defense counsel did not make any kind of objection relating to an obstructed view of the jury or juror inattention. Further, we have • no indication from the record that the alleged obstructed view of the jury still existed during trial, considering that the number of actual jurors in the jury box during trial was less than the number of prospective jurors being questioned in the reconfigured jury box during voir dire. Since defendant’s objection was limited to the problem [ ^created during voir dire due to the increased number of prospective jurors being called, he is precluded from raising this new argument about alleged juror inattentiveness on appeal.[12] Improper Admission of Photographs (Pro Se Assignment of Error Number Eight) In his next assigned error, defendant contends that the trial court erred in allowing the introduction at trial of photographs of the money that was taken from the bank on October 9, 2014. Defendant specifically objects to the introduction of State Exhibits 23 and 24, which show the money that was recovered following defendant’s apprehension, and also to State Exhibits 26 through 33, the photographs taken at the scene of defendant’s apprehension, including photographs of money found on the lawn. Defendant maintains that these photographs were the only physical evidence linking him to the crime scene, and given “all the unanswered questions surrounding these photographs,” he was prejudiced by their admission. Defendant specifically notes concerns about the handling of the recovered money, the alleged discrepancies as to the amount, when the photographs were actually taken, and the withholding of the photographs for approximately two years. We first note that State Exhibits 26 through 33 were admitted without objection at trial. Because the contemporaneous objection rule provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence, we find that defendant has failed to preserve this issue for appellate review. See La. C.Cr.P. art. 841'. 12f)With regard to State Exhibits 23 and 24, the record reflects that defense counsel objected on the basis that the two photographs were duplicative; that one of the photographs contained items that had “nothing to do with this defendant;” and that he did not receive a copy of the photographs. In response to this objection, the State explained that both photographs were relevant because one showed the money before it was counted, and the other showed the money after it was counted. 'The State further explained that the unrelated items contained in one of the photographs, namely a folder, CD, and property sheet, belonged to the detective who returned the money and maintained that the photographs previously had been provided to defendant. Although defense counsel disputed that he had been given one of the photographs, hé stated that he was “just concerned ' with relevance,” specifically complaining about the three unrelated items in the photograph.[13] The trial court, after noting that if the witness is not going to identify the items, “it’s of no moment,” overruled defense counsel’s objection and admitted the photographs into evidence. For photographs to be admissible, they must first be.relevant. State v. Battaglia, 03-692 (La. App. 5 Cir. 11/25/03), 861 So.2d 704, 710, writ denied, 04-1701 (La. 4/29/05), 901 So.2d. 1058. Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. However, even if relevant, photographs will be excluded if the probative value of the photographs is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. C.E. art. 403. In general, photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are Inadmissible, subject to the test that their probative value outweighs any prejudicial effect. State v. Battaglia, supra. Absent a clear abuse of discretion, the trial court’s determinations concerning relevancy and admissibility of evidence should not be overturned on appeal. State v. Curry, 13-817 (La. App. 5 Cir. 3/26/14), 138 So.3d 733, 738. In the present case, the photographs at issue were certainly relevant as they depicted the money that was taken in the robbery. Moreover, defendant has failed to show that he was prejudiced by the admission of the photograph that depicted items unrelated to the money stolen. The jury was clearly aware that defendant was accused of taking only money, and no attention was focused on the extraneous items in the photograph. Moreover, photographs of stolen objects are not inadmissible simply because other objects are depicted therein;- See State v. Lowe, 485 So.2d 99, 106 (La. App. 2nd Cir. 1986), writ denied, 488 So.2d 199 (La. 1986). Accordingly, we find no abuse of discretion in the trial court’s decision to. admit these photographs at trial. Perjured Testimony (Pro Se Assignment of Error Number Nine) In his ninth assigned error, defendant contends that the trial court erred by allowing the State to-use perjured testimony. He specifically maintains that the police officers testified falsely and points to discrepancies in -their testimony. In the present case, defendant failed to object to the officers’ trial testimony on the basis of perjury. Therefore, he has waived his right to assert this claim on appeal. See State v. Singleton, 05-634 (La. App. 5 Cir. 2/14/06), 923 So.2d 803, 809-10, wrint denied, 06-1208 (La. 11/17/06), 942 So.2d 532 and State v. Ayo, 08-468 (La. App. 5 Cir.. 3/24/09), 7 So.3d 85, 98, unit denied, 09-1026 (La. 3/5/10), 28 So.3d 1006. | ^Prejudicial Remarks (Pro Se Assignment of Error Number Ten) Defendant next contends that the trial court erred by not declaring a mistrial after prejudicial racial remarks were made. In his one-sentence argument - to support his assigned error, defendant states, “Ted Raymond stated all big black men look alike.” Defendant has failed to properly brief this assignment, and thus, we consider it abandoned under Uniform Rules, Courts of Appeal, Rule 2-12.4. See State v. Tranchant, 10-459 (La. App. 5 Cir. 11/23/10), 54 So.3d 730, 735, unit denied, 10-2821 (La. 4/29/11), 62 So.3d 108. Improper Comment on Defendant’s Guilt (Pro Se Assignment of Error Number Eleven) Next, defendant contends that the trial court committed reversible error by telling the jury that he was guilty of one of the charged offenses, in violation of La. C.Cr.P. art. 770. Specifically, defendant contends that during the jury instructions, the trial court told the jury that he intentionally refused to bring his vehicle to a stop under circumstances wherein human life was endangered. Defendant’s claim is not supported by the record. The trial court did not express that defendant was guilty of one of the charged offenses, but rather instructed that he was “charged with” the crime of aggravated flight from an officer “in that he did intentionally refuse to bring a vehicle to a stop[.]” (emphasis added.) Thus, this claim has no merit. Missing Transcript (Pro Se Assignments of Error Numbers Twelve and Thirteen) In his final two assigned errors, defendant complains that closing arguments were not transcribed, thereby preventing him from raising certain issues on appeal. La. C.Cr.P. art. 914.1(A) provides, in pertinent part, as follows: “The party making the motion for appeal shall, at the time the motion is made, request the transcript of that portion of the proceedings necessary, in light of the assignment of errors to be urged.” La. C.Cr.P. art. 914.1(B) states: “A transcript of any portion | sgof the proceedings which does not relate to anticipated assignment of errors shall not be furnished to a party for purposes of appeal and shall not result in delay of preparation of the appeal record.” The appellant bears the burden of furnishing the appellate court with a record of the procéedings below, and any inadequacy in the record is imputable to the appellant. State v. Videau, 13-520 (La. App. 5 Cir. 12/27/13), 131 So.3d 1070, 1087-88, writ denied, 14-212 (La. 9/12/14), 160 So.3d 965. Moreover, a defendant is not entitled to relief because of an incomplete record unless there is a showing of prejudice based on the missing portions of the transcript. State v. Neely, 08-707 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 536, writ denied, 09-248 (La. 10/30/09), 21 So.3d 272. In the present case, defendant has failed to show prejudice based on the missing portion of the transcript. First, our records indicate that defendant was provided with the appellate record in June of 2017 and that he made no request to supplement the record with the transcription of the closing arguments prior to filing his supplemental pro se brief in July of 2017. Further, other than a vague allegation,[14] defendant has failed to specifically point out any errors that occurred during closing arguments that would necessitate a review of that portion of the record. Accordingly, these two assignments of error are without merit. ERRORS PATENT REVIEW We have also reviewed for errors patent and have found none. See La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990). Accordingly, for the reasons set forth herein, we affirm defendant’s convictions and sentences. CONVICTIONS AND SENTENCES AFFIRMED . Count one charged defendant' with the armed robbery of Trudy White, and count two charged defendant with the armed robbery of Jarod Murphy. . Count three charged defendant with the armed robbery of Trudy White; count four charged defendant with the armed robbery of Dana Silvey; and count five charged defendant with the armed robbery of Rachel Aiena. . The witnesses described that the robber had on blue jeans, a dark colored shirt, a green bandanna covering his face, and another garment covering his head. . At trial, Detective Macaluso testified that defendant was “wincing from pain” and was "shaking so bad.” . See State v. Allen, 00-13 (La. App, 4 Cir. 1/10/01), 777 So.2d 1252, writ denied, 01-703 (La. 5/3/02), 815 So.2d 92, where the Fourth Circuit found, under similar circumstances, that the evidence was sufficient to support the finding that the defendant was the perpetrator of two robberies that occurred at the same store on different dates. . In his appellate brief, defendant does not specify the exact statement he is complaining • about. However, from his argument and the context of the record, it appears that defem dant moved for a mistrial after Detective Ma-caluso, on the video statement, says to defendant that he was "probably never right when [he] got out of prison.” • . La. R.S. 15:450 provides that "[e]very confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.” . See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). . It is noted that Detective Maealuso" testified at trial that during the last ten or fifteen minutes of the video-taped statement, defendant appeared to be sleeping. However, defendant was in the room by himself at that time, and no interrogation was being conducted. . It is noted that the trial was continued .from September 19 to September 20, 2016. . In defendant’s original pro se brief, he asserts, as Assignment of Error Number Five, that he was forced to go to trial with ineffective assistance of counsel. In his supplemental brief, defendant raises sufficiency of the evidence in Assignment of Error Number Five and- the trial court's denial of his motion to continue based on unprepared counsel in Assignment of Error Number Six. . In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, ‘ as well as the grounds for that objection. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity, allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. Also, a defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal. State v. Bravo, 16-562 (La. App. 5 Cir. 4/12/17), 219 So.3d 1213, 1218. , To the extent defendant attempts to raise . new objections to the admissibility of these photographs on appeal, we note that a new ground for an objection cannot be presented for the first time on appeal. State v. Gaal, 01-376 (La. App. 5 Cir. 10/17/01), 800 So.2d 938, 949-50, writ denied, 02-2335 (La. 10/3/03), 855 So.2d 294. . Defendant claimed that he wanted to "address the veracity of the charges whereas it was proven in closing arguments that an unloaded pellet gun, that his fingerprints were not on, is not considered a dangerous weapon.”